[S. F. No. 6538. In Bank.—May 20, 1915.]

# J. A. ANDREW FRANSCIONI, Respondent, v. SOLEDAD LAND AND WATER COMPANY, Appellant.

WATER-RIGHTS—PRIVATE IRRIGATION SYSTEM.—When an owner of a tract of land develops a source of water by pumping and subdivides the tract into lots and connects each lot with the supply by suitable ditches and irrigates them, and later sells two lots, with the appurtenances, the deed reserving to the grantor the right to maintain the ditches then in use to carry water to said lots and other lots in the subdivisions and all rights of way thereon, the right to have the water delivered to the lots on payment of the required charge becomes appurtenant to the lots and the owner of them is entitled to have the water delivered so long as the source holds out.

ID.—FOUNDATION OF RIGHTS.—Where the owner of such tract of land and water system conveyed the legal title thereto to a domestic corporation, prior to his conveyance of the lots to the plaintiff's predecessor, and thereafter the corporation conveyed the lots to the latter, the holder of lots is entitled to receive the water under the provisions of section 552 of the Civil Code.

ID.—ENFORCEMENT OF RIGHTS.—Such a state of facts give rise to a cause of action to enforce a private right under a scheme for the private sale and distribution of water which is a method repeatedly upheld by the courts of this state.

ID.—CONSTITUTIONAL LAW—CLASS LEGISLATION.—Section 552 of the Civil Code although in terms applying only to domestic corporations, is not unconstitutional on the ground of being class legislation, because foreign corporations doing business in California must conform to its laws.

ID.—METHOD OF CONVERTING TO PUBLIC USE.—A corporation engaged in distributing water under agreement to private land as a private use may with the consent of the owners of the rights to receive such water change the use to a public use subject to control by public authority, and when this is done, all persons concerned will be bound to conform to such regulation.

ID.—CONVERTING PUBLIC USE TO PRIVATE USE.—After such change is made and the rates have been fixed by public authority and acted upon by all parties, the public service company cannot by amending its articles of incorporation so that they declare that it is organized for the purpose of supplying water "as a private corporation and not as a public water company, for private use and not for public use," giving its stockholders a preferred right to water, and by resolutions fixing rates differently from those fixed by public regula-

tion, convert the water back to a private use without the consent of all the beneficiaries of the use.

ID.—CHANGING TO PUBLIC USE—SUFFICIENT EXECUTION OF PETITION.—When the petition requesting public regulation of its rates was signed by the secretary of the company in his official capacity and it was shown by the testimony of the manager of the company that steps were taken by the company to have the board of supervisors establish rates and that when this was done the company conformed to such rates, it is shown that the company authorized the signing and filing of the petition.

ID.—PLEADING—MANDAMUS TO ENFORCE RIGHT TO WATER—AMENDMENT CHANGING PROCEEDING TO CIVIL ACTION.—Where the plaintiff originally commenced a proceeding in *mandamus* to compel the defendant to deliver water to him, it was irregular to change such proceeding to an action for equitable relief or for the recovery of damages, by an amendment of the complaint; but the allowance of such an amendment is without prejudice and will not warrant the reversal of the judgment for the plaintiff, where the facts stated in the original and amended complaints were substantially the same, and the case was tried on the theory that it was an action for equitable relief and for damages.

APPEAL from a judgment of the Superior Court of Monterey County. B. V. Sargent, Judge.

The facts are stated in the opinion of the court.

Wallace M. Pence, and F. P. Feliz, for Appellant.

Zabala & Bardin, for Respondent.

SHAW, J.—This appeal is from the judgment. It was taken within sixty days after entry thereof.

The complaint is in two counts. The first count, in brief, alleges that the plaintiff is the owner of forty acres of land, being lots 5 and 6 of block 3 of a subdivision of lot 3 of the Rancho Ex-Mission Soledad made by one McCray in 1895; that the defendant owns and operates a pumping-plant established to obtain water to irrigate said subdivision, including the land of plaintiff; that the right to have water from said pumping-plant of defendant delivered by the defendant to said lots, on his demand, for the irrigation thereof, upon payment by him of the established rates thereof, is an appurtenance to plaintiff's lots; that he has demanded the delivery of such water by the defendant and offered payment of the rates; that the defendant refuses to deliver the water, except at

higher rates and upon unwarranted conditions, and denies the plaintiff's right thereto, whereby the plaintiff has been damaged by the loss of crops from want of irrigation of the lots, in a sum stated, for which he asks judgment. He also asks judgment that he be declared entitled to receive water from said plant on demand and payment of the established rates. The right of the plaintiff, as alleged in this count, is a private right granted to his predecessor in interest under certain agreements and deeds set forth in the complaint. It does not go upon the theory that the water of the defendant is devoted to public use, or that the plaintiff is a beneficiary of such use and as such entitled to the water.

The second count, as we understand it, although it is not clear, is based upon the theory that the plaintiff, by reason of his ownership of said lots, is a beneficiary of a public use in the water in control of the defendant; that the defendant is in charge of such public use and is bound to deliver water to the plaintiff for the irrigation of said lots, on his demand and payment of the established rates, and that the defendant refuses to do so and denies that the plaintiff is a beneficiary of such public use, or that such public use exists, and denies that it is administering a public use, but asserts that it is conducting a private water system and serving private rights only.

It is argued that the first count does not show that the right to receive the water claimed by the plaintiff from the defendant is a right appurtenant to said lots. We think it is sufficient in this respect. The defendant's predecessor in the ownership of the water plant, one Gould, was the owner of 1,675 acres of land, being the said lot three of Rancho Ex-Mission Soledad. He had purchased it under an agreement by which he was to develop the water, erect the pumping-plant, subdivide the land into suitable farm lots, build ditches from the plant to the several lots for the purpose of carrying the water to each lot for its irrigation and thereupon sell the lots to purchasers. The development of the water supply and the erection of the plant appears to have been an element of the consideration upon which he bought the land, and the supplying of the water to the lots for irrigation by him was evidently a part of the plan devised to enable him to make sales. In pursuance of this agreement he caused the land to be subdivided into lots, erected the pumping-plant, made

ditches therefrom leading to the several lots, and began the irrigation of the lots therefrom, including the lots of plaintiff. Thereafter, in 1898, he agreed to sell these two lots, with the appurtenances, to Kelly, plaintiff's immediate grantor, and in 1899, in compliance with the agreement, the same were conveyed to Kelly, with the appurtenances, the deed reserving to the grantor the right to maintain the ditches then in use to carry water to said lots and other lots in the subdivision and all rights of way thereon. In 1905, Kelly conveyed the lots with the appurtenances to the plaintiff. From the time of the sale to Kelly in 1898, until the refusal of the defendant to deliver water, in December, 1910, water from said plant was regularly delivered to said lots on demand of the owner and used thereon for irrigation. It was delivered by Gould until June, 1899. The defendant corporation was formed at that time and Gould conveyed to it all his property and rights in the water system, upon its agreement to carry out his obligations to the several purchasers of lots regarding the water due them. Thereafter the delivery was made by the defendant. When Gould began irrigating these lots from his water plant through the ditches built by him and thereafter sold the lots with this irrigation system in operation, an easement appurtenant to the lots and a corresponding servitude upon the water system was created, whereby the purchaser and his successors in ownership became entitled to demand and receive from the water system a supply of water for the irrigation of the lot purchased, and the owner of the plant became bound to continue the supply so long as the source held out. It was an easement annexed to the land by use prior to and at the time of the sale thereof, and it passed with the conveyance of the land, first to Kelly and then to the plaintiff. (*Farmer* v. *Ukiah Water Co.,* 56 Cal. 11; *Smith* v. *Corbit,* 116 Cal. 591, [48 Pac. 725].) The plaintiff also became entitled to receive the water from the defendant by virtue of the provisions of section 552 of the Civil Code. That section is as follows:

"Whenever any corporation, organized under the laws of this state, furnishes water to irrigate lands which said corporation has sold, the right to the flow and use of the water is and shall remain a perpetual easement to the land so sold, at such rates and terms as may be established by said corporation in pursuance of law. And whenever any person who is

cultivating land on the line and within the flow of any ditch owned by such corporation, has been furnished water by it with which to irrigate his land, such person shall be entitled to the continued use of said water, upon the same terms as those who have purchased their land of the corporation.''

Gould conveyed to the defendant the legal title to the plaintiff's lots before he executed his deed therefor to Kelly and the defendant perfected Kelly's title shortly afterward by a conveyance thereof to him. Under either of the alternatives provided for by the aforesaid section, therefore, the plaintiff is entitled to the water from the defendant, upon payment of the agreed rates, or a reasonable rate, if none was agreed on. The several water-rights thus vested in the respective lot owners within the irrigated tract would be separate and private rights pertaining to each lot, respectively. The first count contains no allegation that the defendant, or Gould, had dedicated the water supply to public use, and it does not state facts from which such public use is necessarily implied. It is therefore to be construed as a cause of action to enforce a private right. Such methods for the private sale and distribution of water have often been recognized as valid by our decisions. (*Hildreth* v. *Montecito etc. Co.*, 139 Cal. 29, [72 Pac. 395]; *Arroyo Ditch etc. Co.* v. *Bequette,* 149 Cal. 546, [9 Ann. Cas. 1141, 87 Pac. 10]; *Walnut Irr. Dist.* v. *Burke,* 158 Cal. 170, [110 Pac. 518]; *Garrison* v. *North Pasadena etc. Co.,* 163 Cal. 239, [124 Pac. 1009]; *Thayer* v. *California Dev. Co.,* 164 Cal. 129, [128 Pac. 21].)

We are satisfied that section 552 is constitutional. There is nothing in the claim that it is class legislation because it applies only to domestic corporations. That difference alone might even justify the classification, but we need not so decide, for the constitution itself requires foreign corporations doing business here to comply with our laws. (Const., art. XII, sec. 15.)

The appellant contends that the second count does not show that the water is devoted to public use, or that the defendant is in charge of such public use. These propositions are not explicitly stated therein, but the facts alleged, if true, show with sufficient certainty that the water is so dedicated and used. The findings declare that all the allegations of this

count are true so far as they relate to this subject. We need not set out the facts at length.

The court, in the judgment, declared that the defendant was a public service water company in charge of the administration of a public use of water of which plaintiff is a beneficiary, and that the plaintiff is entitled to water therefrom for the irrigation of his lots, upon payment of the rates established by law. The defendant claims that neither the findings nor the evidence support the proposition that the water is devoted to public use, or the proposition that the plaintiff is distributing such water in the character of a purveyor of a public use.

If the system as first established by Gould had continued unchanged, there would have been no public use and the defendant, in selling and distributing the water, would not be a public service corporation, but would be merely engaged in selling water in fulfillment of private contracts with particular persons for the supply of water to specific parcels of land. There would be no general use, no dedication to public use, and no right to the use in any person except the persons owning the lots to which the right to the water had been annexed by the respective agreements. (*Thayer* v. *California Dev. Co.*, 164 Cal. 129, [128 Pac. 21].)

But we perceive no substantial reason why a corporation owning a water supply and engaged in distributing it to persons to whose land it has agreed to deliver it for irrigation, upon a use which is private and not public or general, may not, with the consent of the owners of the rights to receive such water, change the use from a private and particular use to a public use, so as to make the service and terms of delivery subject to regulation and control by public authority. We think this may lawfully be done and that, when it is done, all the parties concerned and consenting thereto, including the corporation engaged in the distribution, will thereafter be bound to conform to such rates, rules, and regulations for the service as may be established by the public body thereunto duly authorized.

The evidence shows that this change was made. In June, 1899, Gould and others formed the defendant corporation and Gould at once transferred to it all his remaining interest in said one thousand six hundred seventy-five-acre tract for the irrigation of which the pumping-plant was erected

and also all his interest in said irrigation system and works and in the contracts made by Gould with purchasers of lots, in consideration whereof the company undertook to carry on the pumping-plant and irrigation system and perform the existing obligations of Gould relating to the land and water-rights thereto belonging. This, the company thereupon and thereafter proceeded to do. Gould was its manager. At the time of the transfer to the company the water rate fixed by the agreements was, so far as shown, $1.50 an acre for each irrigation. In August, 1899, at the instance of the defendant, steps were taken to have the company's water rates established by the board of supervisors of the county, as provided in the act of March 12, 1885 (Stats. 1885, p. 95). In pursuance of section 3 of that act, the defendant and twenty-five persons who were inhabitants and tax-payers of the county signed and filed with the board of supervisors a petition to have the board, to quote the language of the petition, "regulate and control the rates and compensation to be collected by the Soledad Land and Water Company, a corporation, whose works are located about two miles west of the town of Soledad, in said Monterey County, at which place said company has appropriated water for irrigation, for sale, rental, and distribution of said water by said corporation." In pursuance of this petition, after due notice, an ordinance was duly passed by the board fixing the rates to be charged and rules of service to be observed by the defendant in the operation of its irrigation system. This ordinance has ever since remained in force. This statute applies only to persons and corporations engaged in the sale, rental, or distribution of water for public use. By applying for this regulation the defendant, in effect, admitted that it was a public service corporation, administering a public use, and that the water it pumped and distributed was dedicated to public use. It immediately conformed to the rates and rules so established and continued to do so until December, 1905, a period of six years. It appears that the water plant and system was constructed and operated to obtain water for the irrigation of the forty-seven lots into which said tract of one thousand six hundred and seventy-five acres was subdivided. The plaintiff and Kelly, his grantor, have acquiesced in this change in the character of the use and in the rates and rules established by the board. There is evidence tending to show that all the

other owners of lots in said tract likewise acquiesced therein. The judgment herein is, of course, without force as to other lot owners, but the evidence of acquiescence supports the finding that defendant is supplying a public use, instead of the original private rights. There is also evidence that the defendant made sales of water occasionally, when it could be spared, for lands outside of the one thousand six hundred and seventy-five-acre tract. This evidence also aids the conclusion that the prior use, whatever its character, has been converted into a public use for the benefit of all the lands within said tract that are suitable for irrigation and under the flow of the ditches and in convenient distance therefrom, and that plaintiff is entitled to the use of the water on payment of the rates so established.

There is evidence that in December, 1905, the defendant made and entered on its minutes a resolution purporting to fix rates and rules for the sale and delivery of its water different from those fixed by the board of supervisors, that thereafter it did not conform to the rates and rules of the board, and that in 1909 it again attempted to declare its own rates; also that in 1910 it changed its articles of incorporation so as to make them declare that it was organized for the purpose of supplying water "as a private corporation and not as a public water company, for private use and not for public use," and that its stockholders should have a preferred right to the water. The original articles declared that the company was formed to supply water and sell the same for irrigation. This would empower it to do this business for either a private use or a public use, at its option. It is claimed that by reason of its conduct it has changed its character, as well as the use, and is not bound to continue the service as for a public use. It is obvious that if the water had become dedicated to public use in 1905, it was not within the power of defendant, as purveyor or owner thereof, to revoke the dedication and convert it into a private use. This cannot be done in any case without the consent, express or implied, of all the beneficiaries of the use. Such consent was not shown. The point is settled by the decisions of this court in *Leavitt* v. *Lassen, Irr. Co.*, 157 Cal. 89, [29 L. R. A. (N. S.) 213, 106 Pac. 404], and *Fellows* v. *Los Angeles,* 151 Cal. 64, [90 Pac. 137.]

The objection is made that it was not shown that the signing or filing of the petition to the board of supervisors was authorized by the defendant company. No resolution of the board of directors authorizing it appeared in its minute book. But the petition was signed by the secretary of the company in his official character as such and the testimony of Gould who was the organizer and at the time the manager of the company, was that "steps were taken by the company to have the board of supervisors establish rates for the sale, rental, and disposition of that water," and that when this was done the company conformed to the rates established by the supervisors. As before stated, this continued until 1905. We think this shows that the company authorized the signing and filing of the petition.

The cause was tried upon an amended complaint. The original complaint stated the facts substantially as set forth in the amended complaint, but the prayer thereof was for a writ of mandate. It was, in effect, a proceeding in *mandamus,* under sections 1084 and 1097 of the Code of Civil Procedure, to compel the defendant to deliver water to plaintiff's land on payment of the established rates. An alternative writ of mandate was issued and served on the defendant. A demurrer to the complaint was thereafter sustained and thereupon, on leave of court, the amended complaint was filed changing the prayer so as to present an action to have it adjudged that plaintiff is entitled to receive water from the defendant from its plant, that defendant is in charge of a public use in the water for plaintiff's benefit and for damages for the injury from its previous refusal to supply said water. The defendant objected to this change of the character of the case and moved to strike the amended complaint from the files on the ground that it was a departure and stated an entirely new cause of action. We are of the opinion that, under our system of procedure, it is irregular to change a proceeding in *mandamus* to an action for equitable relief or for the recovery of damages, by an amendment of the complaint. In this case, however, the facts necessary to support the prayer of the amended complaint were alleged in the original complaint. The case has been tried on the theory that it was an action for equitable relief and for damages and not a special proceeding in *mandamus.* It does not appear, and it is not asserted, that the defendant was in any

manner inconvenienced or hampered in the presentation of the evidence or in the conduct of the case by the change in its character. The difference in the relief sought is slight. Even in *mandamus* the plaintiff could have recovered the damages here asked. (Code Civ. Proc., sec. 1095.) The difference in the form of the action is technical in character and we cannot perceive that the defendant has suffered substantial injury by the change, or by the conduct of the court below in permitting it. The error is, therefore, not good cause for reversing the judgment. (Code Civ. Proc., sec. 475; Const., art. VI, sec. 4½.)

The objection that the evidence does not support the judgment for damages is not well taken. We cannot enter into the question of the credibility of the witnesses. The values given by them to the crops of alfalfa which the evidence shows the land would have produced if defendant had supplied water when demanded, after deducting the cost of production, are sufficient to show the damages allowed.

The judgment is affirmed.

Sloss, J., Henshaw, J., Lorigan, J., and Angellotti, C. J., concurred.

Rehearing denied.