[L. A. No. 7534. In Bank.—September 6, 1923.]

## G. H. RICHARDSON, Petitioner, v. THE RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

[1] PUBLIC UTILITIES — RAILROAD COMMISSION — JURISDICTION — EVIDENCE.—While it is the rule that, if upon the undisputed facts as presented before the Railroad Commission it appears that the individual or corporation complained of is not a public utility, any decision or order of the commission declaring him or it to be a public utility is void as beyond the jurisdiction of the commission and may be assailed and vacated by means of a writ of review, it is also the rule that if there is any substantial evidence before the commission in the proceeding sought to be annulled, which would justify its finding that the individual or corporation is a public utility, its order must stand.

[2]. ID. — DEFINITION OF PUBLIC UTILITY. — To constitute a public utility, over which the state may exercise its regulatory control without regard to the private interests which may be affected thereby, the devotion to public use must be of such character that the public generally, or that part of it which has been served and which has accepted the service, has the right to demand that that service shall be conducted, so long as it is continued, with reasonable efficiency under reasonable charges.

---

2. When is an irrigation company a public utility, note, 15 A. L. R. 1227.

[3] ID.—DEDICATION OF PUBLIC UTILITY—PRESUMPTIONS.—To hold that property has been dedicated to a public use is not a trivial thing, and such dedication is never presumed without evidence of unequivocal intention.

[4] ID.—DEDICATION—INSUFFICIENCY OF EVIDENCE.—It is held in this proceeding that the evidence is not sufficient to show that the petitioner ever made or intended to make a dedication of the surplus water of his wells to public uses as a public utility subject to regulation by the Railroad Commission.

PROCEEDING in Certiorari to annul an order of the Railroad Commission declaring petitioner to be a public utility engaged in supplying water.   Order annulled.

The facts are stated in the opinion of the court.

G. H. Richardson, Allen & Lyon and Head, Rutan & Scoval for Petitioner.

Hugh Gordon, William W. Clary and Carl I. Wheat for Respondent.

RICHARDS, J., *pro tem.*—This is an application for a writ of review wherein the petitioner seeks to have set aside and annulled a certain decision and order of the Railroad Commission made and entered on October 11, 1922, declaring the petitioner herein to be a public utility engaged in supplying water to complainants before the Commission in the proceeding in which said decision was made, and ordering the petitioner, as such public utility, to continue his water service to said complainants and to such other customers as he had theretofore served, for irrigation or domestic purposes, and further ordering the petitioner to file forthwith a schedule of the rates formerly in effect for such water service, the same to constitute the present schedule for such service.   The entire record in such proceeding is brief and is before us and shows the following substantially undisputed facts to have been presented before the Commission and to have formed the basis for such decision and order.

Prior to and during the year 1913 the petitioner herein was the owner of 45.8 acres of land in Orange County,

California, which was partly set out to young fruit trees. He had upon his said land a well, operated by a small motor or windmill, which at the time furnished a supply of water which was more than adequate for his present needs. He had two neighbors, Flint and Bell, the former having about ten acres of land and the latter about fifteen, neither of whom had a well upon his own land. They each asked the petitioner to sell water to them, and as a neighborly accommodation he agreed to do so, and from time to time thereafter, as required, supplied them with such surplus water as he could spare. In that year, however, the water-level in his small well went down below his pump, so that he could get no water at all, either for his own or neighbors' uses. He accordingly put down a larger well, and was fortunate enough to strike an increased flow of water. He installed a pumping plant for this well, operated electrically, and with water-pipes and conduits extending over his own land; and he thereafter continued to supply his two neighbors with surplus water, as asked for by them, at the price, at first, of 75 cents per hour and later at an increased price of $1 per hour. In about 1918 other neighbors began applying to him for water, and, having a considerable surplus over his own needs, he responded to their requests when made, stating in each case that he could only supply them out of his own surplus and when the water was not being used elsewhere. These neighbors laid their own pipes or ditches to his line, and on each occasion when they needed water asked him for it, and also in each instance paid him at the rate per hour of service when the use of the water on each occasion ceased. The petitioner increased his rates in 1919 to $1 an hour, giving as a reason therefor that the price of "juice" to run his engine had gone up. In the fall of the same year he increased the rate to $1.25 for the same reason. Between 1918 and 1921 he came to serve regularly six neighbors, having in all an acreage of about forty-five acres. He also served occasionally two, or at most three, other neighbors having lands planted intermittently to annual crops. There were also two of his neighbors receiving water for irrigation from his larger well to whom he furnished water for domestic uses from his smaller well and tank operated by a windmill, and for which he received a small amount monthly. He kept

no regular accounts and sent no bills. His net income from these sources for some of the years from 1913 to 1922 was less and for other of these years was slightly more than his outlay in operating expenses, without taking into account the depreciation of his plant by use.

In 1922, evidently for the first time apprehending that some of his neighbors thus being served with water might predicate a claim of right for such service, he went to some of those who were more or less regularly receiving water from him and presented a writing which he asked them to sign, stating that he would not continue to furnish them with any more water unless they did so. The main features of this document consisted in the statement that the petitioner was the owner of certain surplus water from a well located on his property, which he agreed to sell, to those who signed the writing, for irrigation purposes, at the rate of $1.25 per hour, it being understood that the furnishing of such surplus water should not confer on those receiving it any right to demand or receive water from the petitioner, but that the signers would waive all right to demand or receive water from him under or by virtue of any law of the state of California. The petitioner reserved the right to cancel said agreement at any time by giving thirty days' written notice of the same. The persons to whom the petitioner presented this writing for signing refused to sign the same, whereupon the petitioner declined to further supply them with water. Four of the petitioner's former customers then instituted the proceeding before the Railroad Commission to have the petitioner therein declared to be a public utility and to have his schedule of water rates fixed and regulated by law.

[1] It is conceded by both the petitioner and the respondent herein that if, upon the undisputed facts as presented before the Railroad Commission, it appears that the individual or corporation complained of is not a public utility, any decision or order of the Commission declaring him or it to be a public utility is void as beyond the jurisdiction of the Commission and may be assailed and vacated by means of a writ of review. The rule, however, is that if there is any substantial evidence before the Commission in the proceeding thus sought to be annulled, which would

justify its findings to the above effect, its order must stand. It was so stated by this court in the case of *Van Hoosear* v. *Railroad Com.*, 184 Cal. 553, 555 [194 Pac. 1003]. **[2]** In applying this principle to the proceeding before us it is well to have in mind the definition of what constitutes a public utility, as adopted and clearly set forth by this court in the case of *Allen* v. *Railroad Com.*, 179 Cal. 68, 88 [3 A. L. R. 249, 175 Pac. 466], wherein this court says:

" 'What is a public utility, over which the state may exercise its regulatory control without regard to the private interests which may be affected thereby? In its broadest sense everything upon which man bestows labor for purposes other than those for the benefit of his immediate family, is impressed with a public use. No occupation escapes it, no merchant can avoid it, no professional man can deny it. As an illustrative type one may instance the butcher. He deals with the public, he invites and is urgent that the public should deal with him. The character of his business is such that under the police power of the state it may well be subject to regulation, and in many places and instances is so regulated. The preservation of cleanliness, the inspection of meats to see that they are wholesome, all such matters are within the due and reasonable regulatory powers of the state or nation. But these regulatory powers are not called into exercise because the butcher has devoted his property to public service so as to make it a public utility. He still has the unquestioned right to fix his prices; he still has the unquestioned right to say that he will or will not contract with any member of the public. What differentiates all such activities from a true public utility is this, and this only: That the devotion to public use must be of such character that the public generally, or that part of it which has been served and which has accepted the service, has the right to demand that that service shall be conducted, so long as it is continued, with reasonable efficiency under reasonable charges. Public use, then, means the use by the public and by every individual member of it, *as a legal right*. Such is not only the accepted significance of the phrase by the great weight of authority as expounded by Mr. Lewis (Eminent Domain, sec. 164 et seq.), but is the definition repeatedly announced by this court. . . . ' "

[3]   The court also and in the quite recent case of *Van Hoosear* v. *Railroad Com.*, *supra,* quoted with approval the further statement in the Allen case that " 'To hold that property has been dedicated to a public use is "not a trivial thing" . . . , and such dedication is never presumed "without evidence of unequivocal intention." ' "

[4]   Applying the foregoing definition as to what constitutes a public utility to the evidence before us in the instant proceeding, and also applying the foregoing measure by which the evidence of the dedication of the property in question to a public use is to be weighed, we utterly fail to find any substantial evidence that this petitioner ever made or intended to make  such a dedication of the surplus water from the wells upon his tract of land to public uses so as to entitle either the little circle of his immediate neighbors using the same, or the public generally to demand as a matter of legal right that his said supply and service of surplus water should be conducted and continued as a public utility subject to regulation as to its service and rates by the Railroad Commission.   There is no case to which our attention has been called which goes so far as to hold that the mere fact that a private individual or corporation furnishes the surplus portion of a limited water supply to a small circle of consumers, each especially requesting and individually receiving the use and benefit of the same, and each paying an agreed sum for each particular period of such use, has been held to be a public utility by reason of these facts alone and in the absence of any other facts showing an express or implied dedication of the property to a public use. Each of the cases cited and relied upon by respondent herein contained other essential facts which warranted this court in finding a dedication of the property involved in each of said cases to public users.   In *Franscioni* v. *Soledad Land & Water Co.*, 170 Cal. 221 [149 Pac. 161], the dedication to public use was implied from the application of the owner of the property to the board of supervisors for a public fixation of water rates.   In the case of *Palermo L. & W. Co.* v. *Railroad Com.*, 173 Cal. 380 [160 Pac. 228], the dedication to a public use was implied from provisions in the contracts of the water company stipulating that water was to be furnished "at such rates as may be fixed by law."

191 Cal.—46

In the case of *Producers Transp. Co.* v. *Railroad Com.,* 176 Cal. 499 [169 Pac. 59] the dedication of the property, an oil pipe-line, to a public use was implied from the exercise by the corporation installing it of the right of eminent domain. In the case of *Traber* v. *Railroad Com.,* 183 Cal. 304 [191 Pac. 366], the dedication to a public use was implied from the fact that the corporation had been organized under acts of the legislature providing for the organization of corporations for supplying water for public use. In the case of *Brewer* v. *Railroad Com.,* 190 Cal. 60 [210 Pac. 511] the dedication to public use was implied from the fact that the water company had voluntarily submitted itself to the jurisdiction of the Railroad Commission and to orders made by it fixing the rates to be charged consumers for its water service.

The most instructive case coming recently before this court for adjudication, and the case most nearly approaching the instant case as to its main facts, is the case of *Van Hoosear* v. *Railroad Com., supra,* upon which the respondent herein strongly relies as sustaining its position. In that case, as in this case, the petitioner for the writ was an individual having a small water plant upon his farm, originally installed to supply water for his own use thereon, but from which he began to supply his surplus water to some of his neighbors as a matter of accommodation, continuing for some years so to do, but finally discontinuing such service when he sold his farm. In commenting upon the facts of that case as thus far stated this court aptly said:

"The petitioner's plant is an exceedingly small one; it was originally built to supply water for his own use on his farm; he testifies, and his testimony is corroborated, that he began to supply water to some of his neighbors as a matter of accommodation and merely continued so doing; and he finally discontinued his service because he had sold his farm. It is a case to which the obligations and responsibilities of a public utility are wholly inappropriate, and where the petitioner, by dedicating his system to public use, would impose a perpetual servitude upon his farm from which there could be no escape except by the grace of the commission. It is a good illustration of the truth of the

statement in *Allen* v. *Railroad Com., supra,* that 'to hold that property is dedicated to a public use is no trivial thing,' and of the justice of the statement which immediately follows that 'such declaration is never presumed without evidence of unequivocal intention.' "

The fatal error which Van Hoosear made, and which compelled this court to hold that his water service had been dedicated to a public use, consisted in the fact that he had voluntarily gone before the Railroad Commission with a petition for leave to discontinue his service, and upon being refused such leave, had continued his service for some time in acquiescence with the order of the Commission and in the capacity of an operator of a public utility. It was upon this ground alone that this court felt constrained to deny relief to petitioner in that case. No such situation is presented in the instant case, and hence the language of this court in dealing with those of the facts of that case which are practically identical with those of the case at bar must be given particular significance and force as decisive of the question before us.

There are two alleged facts upon which the respondent herein chiefly relies as furnishing the basis for its findings and conclusion that the petitioner's water plant was a public utility. One of these is to be found in its assertion that there was no other water supply available to the customers of the petitioner. The record does not bear out this assertion, since it appears that there was another pumping plant within a short distance from the lands of certain of the petitioner's customers, the waste water of which at times ran into this very neighborhood, and there is nothing in the record to show that its supply would not be available if this petitioner's service were to cease. Neither is there anything in the record to show that the neighbors and customers of the petitioner herein could not sink wells on their own lands as successfully as he had done. The other fact relied upon by the respondent is that Mr. Henry West, when he bought his land in 1919, went to see the petitioner, and, to use his own language, "told Richardson I would like to set the place out to trees and didn't know when I could put down a well. He said, 'All right,' he had water to sell, he would furnish water, to go ahead and

set out the trees, so I went and bought trees and set them out.'' The mere recital of this interview should suffice to show its insufficiency as any basis for a finding that the petitioner was thereby intending to declare that his water plant was a public utility or to dedicate it to the general public use as such.

The decision and order of the Railroad Commission is annulled.

Myers, J., Seawell, J., Waste, J., Lennon, J., Lawlor, J., and Wilbur, C. J., concurred.