[No. 24739. *En Banc.* April 10, 1934.]

ABB CLARK *et al., Respondents,* v. FRANK OLSON, *Appellant.*[1]

*Thomas Smith* and *James G. Smith,* for appellant.

*Alfred McBee* and *W. L. Brickey,* for respondents.

[1]Reported in 31 P. (2d) 534.

MILLARD, J.—Abb Clark and Jake Stafford, owner and tenant, respectively of a residence in Rockport, applied to the superior court for Skagit county for a writ of mandamus requiring Frank Olson, as the owner of a water system in Rockport, operated for hire, to supply water to the Clark-Stafford residence. The trial court found that Olson declined, without right, after demand and tender of the customary charge therefor, to supply the petitioners with water. The court concluded that Olson was operating in Rockport, within the meaning of the statute (Rem. Rev. Stat., § 10344), a water system for hire, and that Olson was "operating and conducting a public utility." Judgment was entered requiring Olson to connect the water pipe-line, which runs from the petitioners' property, with Olson's water main and to allow the water to flow through the same. Olson has appealed.

The statute provides that every person owning or operating a water system for hire is a water company, and that a water company as thus defined is a public service company.

"The term 'water system,' when used in this act, includes all real estate, easements, fixtures, personal property, dams, dikes, head gates, weirs, canals, reservoirs, flumes or other structures or appliances operated, owned, used or to be used for or in connection with or to facilitate the supply, storage, distribution, sale, furnishing, diversion, carriage, apportionment or measurement of water for power, irrigation, reclamation, manufacturing, municipal, domestic or other beneficial uses for hire.

"The term 'water company,' when used in this act, includes every corporation, company, association, joint stock association, partnership and person, their lessees, trustees or receivers appointed by any court whatsoever, and every city or town owning, controlling, operating, or managing any water system for hire within this state. . . .

"The term 'public service company,' when used in this act, includes every common carrier, gas company, electrical company, water company, telephone company, telegraph company, wharfinger and warehouseman as such terms are defined in this section." Rem. Rev. Stat., § 10344.

Proceeding from the premise afforded by the statute, respondents argue that it is the duty of appellant to supply them with water.

The facts are summarized as follows: Rockport is an unincorporated village surrounded by hills in the eastern part of Skagit county. The inhabitants obtain water for domestic purposes from several creeks running down from the north. No one water system or pipe-line serves even a majority of the inhabitants. One witness testified: "It seems everybody has a water system." The platted portion of the village consists of about six blocks, in and around which are about fifty houses. The rights of way of the Great Northern Railroad, which run east and west through the county, and the railroad to the Skagit power project of the city of Seattle, are in the village south of the platted portion. To the south of the railroads, flows the Skagit river.

West of the platted portion is a farm, formerly owned by Johnson and Janson, who, more than fifteen years ago, platted the townsite and constructed seven houses. These two men, to get water to the houses they had built, went to the east of the platted portion and constructed a tank for the impounding of water. They then installed a pipe-line leading from the tank to the houses. In 1928 or 1929, appellant and wife purchased the farm. Thereafter, they replaced the tank on the hill east of the platted portion, and erected three houses. The ten houses have continuously, since that time, been supplied with water from that tank and pipe-line.

Appellant sold the ten houses to various persons, under real estate contracts of sale. The contracts do not so recite, but it fairly appears that the vendor and vendee understood that the supplying of water from appellant's tank to each of the ten houses was part of the consideration of the contract. It further appears that, when the purchase price of the real estate contracts had been paid, the appellant intended to charge for the water supplied by him in the future to those houses.

The appellant also supplies water to nine other houses in Rockport. He charges each user one dollar per month, or ten dollars per annum if paid in advance. There is no showing that appellant ever intended to engage in a public service—that he was in the business of selling water to the public at a profit. He never solicited anyone to take water from his pipeline, but if anyone desired to connect with his pipeline, he granted permission, and such water user paid to him one dollar a month or ten dollars per annum.

"Water systems" other than appellant's, and similar to his, are in Rockport. Of the fifty structures in Rockport, appellant serves nineteen, which include ten of his own houses.

Respondent Clark's house was supplied by appellant in June and July, 1932, when the tenant therein was a Mr. Rice. The pipe-line running from the property to appellant's pipe-line was disconnected by appellant when Rice vacated the property in July, 1932. No rental for water service to that house has been paid by anyone to appellant since that time. The house remained vacant until September, 1933, when it was rented to respondent Stafford. Respondent Clark's demand at that time for the connection of the pipe-line

from his property with appellant's pipe-line was refused.

Rockport is not incorporated. Appellant did not, nor did any of his predecessors in interest, have a franchise from the county commissioners.

The services of the appellant consisted of supplying water to ten of his vendees and to nine other water users who were permitted to tap his pipe-line and transmit water to their own individual premises. The charge made therefor was a nominal one, and was primarily for the purpose of assisting in the maintenance of the water system and not for the purpose of making any profit on the operations.

Such service was not sufficient to make the water system of the appellant a public utility offering its water to the general public. Appellant's supplying of water to his vendees, to his neighbors and a few others, under the facts of this case, did not constitute appellant's water system a public utility; there was no dedication of his water system to a public use so as to entitle the public generally to demand water service as a matter of legal right.

The statute (Rem. Rev. Stat., § 10344), quoted above, provides that every person owning or operating any water system for hire is a water company, and that a water company as thus defined is a public service company.

Section 23, Art. XII, constitution of California, declares that every private corporation furnishing water directly or indirectly to or for the public is a public utility. Section 1, p. 84, California Laws of 1913, provides that, whenever any corporation sells water to any person, such corporation is a public utility and subject to the jurisdiction, control and regulation of the railroad commission. The California public utili-

ties act defines a water corporation as including every corporation or person, etc., owning, controlling, operating or managing any water system for compensation within the state.

Our statute and the law of California differ not in any essential particular.

In *Van Hoosear v. Railroad Commission,* 184 Cal. 553, 194 Pac. 1003, the petitioner sought by an original application to the supreme court of California to annul an order made in a proceeding upon its own initiative, finding that the petitioner, Van Hoosear, was engaged in the business of supplying water to the public, had been charging rates not authorized by the commission, and had discontinued his service without the permission of the commission, and directing him to resume service and supply water at rates fixed by the order. The petitioner had a small water plant upon his farm, originally installed to supply water for his own use on the farm, but from which he began to supply his surplus water to some of his neighbors as a matter of accommodation, continuing for some years to do so, but finally discontinuing such service when he sold his farm.

Two years prior to the commencement of the proceeding in which he sought annulment of the railroad commission's order requiring him to resume service and supply water, Van Hoosear petitioned the commission for leave to discontinue his service. Such leave was refused, after a hearing before the commission, and Van Hoosear continued the water service thereafter without anything to indicate that he did not do so in acquiescence with the order of the commission and in the character of a public utility operator, which he and the commission assumed he had. The court said that, if it were not for those circumstances, it was

exceedingly doubtful whether the order of the commission could be sustained. The court stated the only question was as to the character of the petitioner, and said:

"The test to be applied is whether or not the petitioner held himself out, expressly or impliedly, as engaged in the business of supplying water to the public as a class, not necessarily to all of the public, but to any limited portion of it, such portion, for example, as could be served by his system, as contradistinguished from his holding himself out as serving or ready to serve only particular individuals, either as a matter of accommodation or for other reasons peculiar and particular to them. . . . The petitioner's plant is an exceedingly small one; it was originally built to supply water for his own use on his farm; he testifies, and his testimony is corroborated, that he began to supply water to some of his neighbors as a matter of accommodation and merely continued so doing; and he finally discontinued his service because he had sold his farm. It is a case to which the obligations and responsibilities of a public utility are wholly inappropriate, and where the petitioner, by dedicating his system to public use, would impose a perpetual servitude upon his farm from which there could be no escape except by the grace of the commission. It is a good illustration of the truth of the statement in *Allen v. Railroad Commission, supra* [179 Cal. 68, 175 Pac. 466, 8 A. L. R. 249], that 'to hold that property is dedicated to a public use is no trivial thing,' and of the justice of the statement which immediately follows that 'such declaration is never presumed without evidence of unequivocal intention.'

"Nevertheless, we see no escape from the conclusion that it was not an unreasonable inference that by himself requesting leave of the commission to discontinue, and then, when this leave was refused after opposition, continuing the service, Van Hoosear held himself out as engaged in a public utility business. If he did so hold himself out, it fixed the character of his business from then on, no matter how foolish he may

have been in so doing, or how ignorant he may have been of the legal consequences. His petition for leave to discontinue of necessity assumed that he was in a public utility business, as otherwise the commission would have had no authority in the premises. It was in effect a representation that he was so engaged. This representation, furthermore, was one made not only to the commission but to his own consumers against whom the petition was directed and some of whom opposed it. The order of the commission denying the request, while it does not expressly find that he was engaged in a public utility business, undoubtedly because no question was made upon the point, assumes it throughout and was made upon that basis. It may well be that even by thus representing to the commission and his consumers that he was engaged in a public utility business and submitting himself in that character to the jurisdiction of the commission, Van Hoosear would not be estopped from showing that he was in truth not so engaged. But where, after having made this representation and after having been refused leave to discontinue, he to all outward appearances, acquiesces in the refusal and continues his service, it is a fair inference that he continues in the character which he represented he had and which the commission assumed he had; in other words, it is a fair inference that by continuing in business under these circumstances he held himself out, from then on at least, as doing a public utility business. So holding himself out, his business became in truth a public utility business, no matter whether it was previously so or not. There would seem, as we have said, no escape from this conclusion, and it is supported by the authority of *Franscioni v. Soledad, etc., Co.*, 170 Cal. 221 (149 Pac. 161), where a very similar state of facts was involved. This conclusion is decisive.

"To avoid any misapprehension, we might add that what we have said is not to be taken as meaning that it was a necessary inference that Van Hoosear had held himself out as engaged in a public utility business. Upon all the evidence in the case, the commission might well have rejected the inference as contrary to

the actual fact. But the commission did not do this, and the inference mentioned being a not unreasonable one, is sufficient to sustain the order.''

In the foregoing case, the public service character of the petitioner was established. Under the rule therein enunciated for determination of the character of the business, the judgment of the trial court in the case at bar cannot be sustained.

Three years subsequent to the opinion in the case cited, the supreme court of California held in *Richardson v. Railroad Commission,* 191 Cal. 716, 218 Pac. 418, that a landowner who, from a well on his farm, supplied, via pipe-line, certain neighbors regularly and still others occasionally with such surplus water as he could spare, for which he charged a certain hourly rate, had not dedicated his work to a public use so as to entitle the public generally to demand water service as a matter of legal right. The court said:

''It is conceded by both the petitioner and the respondent herein that if, upon the undisputed facts as presented before the Railroad Commission, it appears that the individual or corporation complained of is not a public utility, any decision or order of the Commission declaring him or it to be a public utility is void as beyond the jurisdiction of the Commission and may be assailed and vacated by means of a writ of review. The rule, however, is that if there is any substantial evidence before the Commission in the proceeding thus sought to be annulled, which would justify its findings to the above effect, its order must stand. It was so stated by this court in the case of *Van Hoosear v. Railroad Com.,* 184 Cal. 553, 555 (194 Pac. 1003). In applying this principle to the proceeding before us, it is well to have in mind the definition of what constitutes a public utility, as adopted and clearly set forth by this court in the case of *Allen v. Railroad Com.,* 179 Cal. 68, 88 (3 A. L. R. 249, 175 Pac. 466), wherein this court said:

" 'What is a public utility, over which the state may exercise its regulatory control without regard to the private interests which may be affected thereby? In its broadest sense everything upon which man bestows labor for purposes other than those for the benefit of his immediate family, is impressed with a public use. No occupation escapes it, no merchant can avoid it, no professional man can deny it. As an illustrative type one may instance the butcher. He deals with the public, he invites and is urgent that the public should deal with him. The character of his business is such that under the police power of the state it may well be subject to regulation, and in many places and instances is so regulated. The preservation of cleanliness, the inspection of meats to see that they are wholesome, all such matters are within the due and reasonable regulatory powers of the state or nation. But these regulatory powers are not called into exercise because the butcher has devoted his property to public service so as to make it a public utility. He still has the unquestioned right to fix his prices; he still has the unquestioned right to say that he will or will not contract with any member of the public. What differentiates all such activities from a true public utility is this, and this only: That the devotion to public use must be of such character that the public generally, or that part of it which has been served and which has accepted the service, has the right to demand that that service shall be conducted, so long as it is continued, with reasonable efficiency under reasonable charges. Public use, then, means the use by the public and by every individual member of it, *as a legal right*. Such is not only the accepted significance of the phrase by the great weight of authority as expounded by Mr. Lewis (Eminent Domain, § 164 *et seq.*) but is the definition repeatedly announced by this court. . . .'

"The court also and in the quite recent case of *Van Hoosear v. Railroad Com., supra,* quoted with approval the further statement in the *Allen* case that 'To hold that property has been dedicated to a public use is "not a trivial thing," . . . and such dedication is

never presumed "without evidence of unequivocal intention." '

"Applying the foregoing definition as to what constitutes a public utility to the evidence before us in the instant proceeding, and also applying the foregoing measure by which the evidence of the dedication of the property in question to a public use is to be weighed, we utterly fail to find any substantial evidence that this petitioner ever made or intended to make such a dedication of the surplus water from the wells upon his tract of land to public uses so as to entitle either the little circle of his immediate neighbors using the same, or the public generally to demand as a matter of legal right that his said supply and service of surplus water should be conducted and continued as a public utility subject to regulation as to its service and rates by the Railroad Commission. There is no case to which our attention has been called which goes so far as to hold that the mere fact that a private individual or corporation furnishes the surplus portion of a limited water supply to a small circle of consumers, each especially requesting and individually receiving the use and benefit of the same, and each paying an agreed sum for each particular period of such use, has been held to be a public utility by reason of these facts alone and in the absence of any other facts showing an express or implied dedication of the property to a public use. Each of the cases cited and relied upon by respondent herein contained other essential facts which warranted this court in finding a dedication of the property involved in each of said cases to public users. In *Franscioni v. Soledad Land & Water Co.*, 170 Cal. 221, 149 Pac. 161, the dedication to public use was implied from the application of the owner of the property to the board of supervisors for a public fixation of water rates. In the case of *Palermo L. & W. Co. v. Railroad Com.*, 173 Cal. 380, 160 Pac. 228, the dedication to a public use was implied from provisions in the contracts of the water company stipulating that water was to be furnished 'at such rates as may be fixed by law.' In the case of *Producers' Transp. Co. v. Railroad Com.*, 176 Cal. 499, 169 Pac. 59, the dedication

of the property, an oil pipe line, to a public use was implied from the exercise by the corporation installing it of the right of eminent domain. In the case of *Traber v. Railroad Com.*, 183 Cal. 304, 191 Pac. 366, the dedication to a public use was implied from the fact that the corporation had been organized under acts of the legislature providing for the organization of corporations for supplying water for public use. In the case of *Brewer v. Railroad Com.*, 190 Cal. 60, 210 Pac. 511, the dedication to public use was implied from the fact that the water company had voluntarily submitted itself to the jurisdiction of the Railroad Commission and to orders made by it fixing the rates to be charged consumers for its water service.

"The most instructive case coming recently before this court for adjudication, and the case most nearly approaching the instant case as to its main facts, is the case of *Van Hoosear v. Railroad Com., supra,* upon which the respondent herein strongly relies as sustaining its position. . . .

"The fatal error which Van Hoosear made, and which compelled this court to hold that his water service had been dedicated to a public use, consisted in the fact that he had voluntarily gone before the Railroad Commission with a petition for leave to discontinue his service, and upon being refused such leave, had continued his service for some time in acquiescence with the order of the Commission and in the capacity of an operator of a public utility. It was upon this ground alone that this court felt constrained to deny relief to petitioner in that case. No such situation is presented in the instant case, and hence the language of this court in dealing with those of the facts of that case which are practically identical with those of the case at bar must be given particular significance and force as decisive of the question before us.

"There are two alleged facts upon which the respondent herein chiefly relies as furnishing the basis for its findings and conclusion that the petitioner's water plant was a public utility. One of these is to be found in its assertion that there was no other water supply available to the customers of the petitioner.

The record does not bear out this assertion, since it appears that there was another pumping plant within a short distance from the lands of certain of the petitioner's customers, the waste water of which at times ran into this very neighborhood, and there is nothing in the record to show that its supply would not be available if this petitioner's service were to cease. Neither is there anything in the record to show that the neighbors and customers of the petitioner herein could not sink wells on their own lands as successfully as he had done.''

The judgment is reversed, and the cause remanded with direction to dismiss the action.

MITCHELL, TOLMAN, STEINERT, GERAGHTY, and HOLCOMB, JJ., concur.

MAIN, J. (dissenting)—I am unable to concur in the majority opinion.

The statute (Rem. Rev. Stat., § 10344) defines a ''water company'' as including every person ''owning, controlling, operating or managing any water system for hire within this state.'' It will be noticed that, by this statute, a water company is one which is operated ''for hire.'' The same section of the statute defines a ''public service company'' as including a water company, as that term is defined in the section. Whether a person is operating a public service company, depends not upon whether it is supplying water to the public as a class, but it is such company if it supplies water to a limited portion of the public such as can be served by the system.

As stated in *Van Hoosear v. Railroad Commission*, 184 Cal. 553, 194 Pac. 1003, and cited in the majority opinion:

''The test to be applied is whether or not the petitioner held himself out, expressly or impliedly, as engaged in the business of supplying water to the public as a class, not necessarily to all of the public, but to

any limited portion of it, such portion, for example, as could be served by his system, as contradistinguished from his holding himself out as serving or ready to serve only particular individuals, either as a matter of accommodation or for other reasons peculiar and particular to them. [Citing authorities.]''

Under the facts stated in the majority opinion, it seems to me that the appellant was, if not expressly, impliedly holding himself out as engaged in the business of supplying water to all persons that could be served by his system. No one had at any time been refused the service of water by him except the respondent. It is true that only a limited number were supplied, but under the test to be applied, that was sufficient to constitute a public service company within the meaning of the statute, because all persons that applied, with the one exception mentioned, had been furnished water.

The fact that the system was not operated for profit, if such were the fact, is not of controlling importance. The statute makes no mention of profit, but says that a water company is one operated ''for hire.'' That the appellant operated his water system for hire, it seems to me, cannot be questioned.

For the reasons stated, I dissent.

BEALS, C. J., and BLAKE, J., concur with MAIN, J.