[Civ. No. 17942. Second Dist., Div. Three. May 15, 1951.]

FREDERICK R. TURNER et al., Appellants, v. LOWELL AVENUE MUTUAL WATER COMPANY (a Corporation) et al., Respondents.

William H. Keepin for Appellants.

J. Q. Gilchrist and Everett H. Smith for Respondents.

SHINN, P. J.—Plaintiffs Turner brought this action to establish their right to receive through an existing distributing system a domestic water supply upon a portion of Lot A, Tract 1881, in the La Crescenta District of Los Angeles County. They claim under a right appurtenant to their land. Lowell Avenue Mutual Water Company, a corporation, referred to as defendant, claims to be the sole owner of the distributing system. It shut off plaintiffs' water because they did not pay their water bills at rates fixed by the corporation. The judgment decrees that plaintiffs have no interest in the water system, that it is owned by defendant, and that plaintiffs take nothing by their action. Plaintiffs appeal.

In October, 1942, Carl M. Bergman, then the owner of Lot A, subdivided the same and sold building lots and garden sites to numerous persons, including plaintiffs, whose parcel had dimensions of 200 x 500 feet. At the time plaintiffs purchased, Bergman was negotiating for a water supply with Hillcrest Sanitarium, Ltd., a corporation, which had a well located on Lot A. When plaintiffs made a deposit on their purchase Bergman agreed in writing that the deposit would be returned unless a water line was completed within 60 days. On October 19, 1942, Hillcrest Sanitarium granted easements to Bergman, his heirs, executors, administrators and assigns consisting of the right to install and maintain water pipes and other facilities over the land of Hillcrest to distribute water for the use and benefit of Lot A, or any part thereof; also the right to connect Bergman's proposed water

system serving Lot A with Hillcrest's pipeline then maintained over Lot A, and also the right of the grantee, his heirs, executors, administrators and assigns, to take water from the Hillcrest supply for the use of the owners of Lot A and portions thereof, "provided grantee shall pay to grantor the actual cost to grantor of the water so used by grantee, his heirs, executors, administrators and assigns." The several privileges were granted for a period of 50 years. In October and November, 1942, Bergman laid a pipeline and connected with the Hillcrest system. One Moorhouse, who had a home on Lot 10 adjoining and also owned other property in the vicinity, paid one third of the cost, and by agreement with Bergman acquired a one-third interest in the pipeline. Plaintiffs thereupon entered upon their land, constructed a house, landscaped the property, connected with and used water from the pipeline, and continued to receive water from that source until August, 1948, when defendant corporation entered upon the land, cut off plaintiffs' water supply, and installed a bypass to carry water around plaintiffs' property. Since that time plaintiffs have been obliged to install a water tank on their property and haul water from Tujunga, a distance of some 2½ miles. They allege that as a consequence they lost 29 fruit trees and two shade trees, for which they seek $1,400 as damages.

In the meantime Bergman had conveyed his interest in plaintiffs' land to one Drescher, and on January 19, 1944, Drescher and wife conveyed the land to plaintiffs by grant deed. This conveyance transferred any and all easements which were then appurtenant to the land.

The court found "that the plaintiffs did not at any time acquire or own an or any interest in or to the easement granted to said Carl M. Bergman by Hillcrest Sanitarium." This finding is without support in the evidence. Defendant attempts to justify it upon the ground that Bergman's water line was not installed and in use at the time plaintiffs made a deposit on their purchase. They say that as no water system was then in operation no easement in the system could have been acquired by plaintiffs as appurtenant to the land, and that plaintiffs did not acquire an easement in any other manner. The argument ignores the broad basis of plaintiffs' claims. The rights granted by Hillcrest ran in favor of plaintiffs as assigns of Bergman, not only as to the use of water but also as to a connection with and use of the Hillcrest line. The Hillcrest grant so provides. Plaintiffs purchased

the land and the water right. Bergman, as part considera-
tion for the purchase, proceeded at once to install the line in
order to serve the buyers of his lots. According to Mr.
Turner, $100 was added to the prices of the lots to help defray
the cost. The oral agreement was fully executed. Upon the
strength of it plaintiffs paid for the land, built their house
and planted and developed an orchard. They have paid, or
offered to pay, for the water at cost and have thus complied
with the condition upon which they were privileged to enjoy
their rights. This executed oral agreement was binding upon
Bergman and. upon all claiming under him of subsequent
date, and with notice. Defendant does not claim any right
as a bona fide purchaser.

Moreover, the conveyance of Drescher and wife, Bergman's
grantees, transferred to plaintiffs as appurtenant to the land
the right to the use of the distributing system which had been
in operation and serving plaintiffs' property for more than a
year. (*Franscioni* v. *Soledad Land & Water Co.*, 170 Cal.
221, 224 [149 P. 161]; *Relovich* v. *Stuart*, 211 Cal. 422, 428
[295 P. 819].) Plaintiffs had a sound title to an easement
consisting of a right to receive their water through the
distributing system.

The defendant contends that if plaintiffs ever had
a right to receive water through the Bergman system, they
had lost that right before their service was disconnected.
The claims are that the water users, including plaintiffs,
transferred their rights in the system to an unincorporated
mutual water system which they organized and later incorpo-
rated; that if their rights were not actually transferred to the
association the members surrendered all control to the associ-
ation and are bound to pay for water at rates fixed by the
corporation as successor of the association. These theories
prevailed in the trial court.

Among the conclusions of law is the following: ''The
Court concludes that said Lowell Avenue Improvement
Association was the sole owner of the right to the use of said
water system, pipe lines, pump, pump house, and all other
appurtenant equipment, and that, by becoming members
thereof, plaintiffs herein transferred and conveyed to said
association any and all rights and interest they may or might
have had in and to said pipe line, system, and equipment.''
Also, running through the findings are statements which sug-
gest the theory that the association had the power to take

action which would nullify plaintiffs' right to use the system except on terms specified by the association, and the further theory that plaintiffs had received benefits through the association which estopped them from questioning the authority of the association to prescribe the terms upon which they might make use of the system.

A narration of the events which led to the present dispute will disclose that there is no factual basis in the findings, nor basis in the evidence, for a conclusion that plaintiffs have transferred, surrendered or forfeited their easement in the distributing system.

The county of Los Angeles acquired the Hillcrest property shortly after plaintiffs made their purchase and a change was made in the system of distribution. The Bergman line was disconnected from the Hillcrest line and connected with the source of supply. A new line was run to the Hillcrest property and separate meters were installed, one for the Hillcrest property and the other for the Bergman property. The portion of the Hillcrest line that Bergman had been using was surrendered to him. Individual meters were installed by the users on Lot A. For some undisclosed reason during an interval of two or three years no collections were made for water used.

The users in Lot A associated themselves together as Lowell Avenue Improvement Association. Bergman, with the approval of Moorhouse, gave the association written permission to use the water line and equipment free of charge upon conditions that the property of Moorhouse be served thereby, as well as the owners in Lot A, and that the association bear all costs of maintenance and improvement. There was no transfer to the association of the physical property. No water rights were transferred to the association and it owned nothing other than the right to use the distributing system for the benefit of its members. It was merely an agency to serve the convenience of its members and it had no contractual rights with them and no obligations other than those which were agreed upon from time to time.

The association appointed a Mr. Morrell as agent to collect water bills upon the individual meter readings. At the direction of the county, collections as made, including charges for past service, were paid over to Southern California Water Company at the rates that company charged for the water, which were supposedly based upon cost as provided in the Hillcrest agreement. The members of the association agreed in

writing that they would pay their bills to Mr. Morrell and that upon their failure to pay their supply might be cut off. In May, 1945, it was also agreed that an emergency fund of $300 would be created, and the charges were voluntarily increased above those of the water company in order to accumulate this sum. According to the evidence payments were made by all members, including plaintiffs, at an increased rate until this sum had been accumulated. It does not appear that any other concerted action was taken by the members while plaintiffs belonged to the association, which had a material bearing upon the issues.

Plaintiffs did not, by joining the association, or otherwise, transfer to the association or lose their right to receive water through the pipeline. ▆▆ Even the transfer of a water right which is appurtenant to land to a mutual water company in exchange for stock does not impair the original right. (*Woodstone Marble & Tile Co.* v. *Dunsmore etc. Co.,* 47 Cal.App. 72 [190 P. 213].)

▆▆ In August, 1946, Mr. Turner resigned from the association and shortly thereafter the remaining members of the association formed defendant corporation. Bergman, Moorhouse and a majority of the members of the association conveyed to the corporation their interests in the distributing system. The corporation procured a permit to issue stock and gave all the water users, including plaintiffs, an opportunity to buy a share of stock for $150. Under its by-laws no one but stockholders would be served with water, and these would be served only at rates fixed by the corporation. Plaintiffs refused to purchase a share of stock or to pay charges for water in excess of the rates charged by Southern California Water Company. They computed the amounts they owed for water according to the rates charged by the company and offered to pay these amounts, but they were refused by the corporation. Solely for this reason their water was shut off.

Defendant contends that plaintiffs are bound by all the acts of the association and cites the rule stated in *Dingwall* v. *Amalgamated Assn. Etc. Employees,* 4 Cal.App. 565, 569 [88 P. 597]: "The constitution, rules and by-laws of a voluntary unincorporated association constitute a contract between the association and its members, and the rights and duties of the members as between themselves and in their relation to the association, in all matters affecting its internal

government and the management of its affairs, are measured by the terms of such constitution and by-laws.'' Defendant frequently alludes to this supposed agreement between the plaintiffs and the association and the duty of plaintiffs to comply therewith. Plaintiffs reply, correctly, that the association had no constitution, by-laws, rules or regulations, nor any agreement with plaintiffs except those we have mentioned. There was no contractual limitation of plaintiffs' rights.

The court found that from May, 1944, until August 2, 1946, plaintiffs were members of the association and received the benefits of membership. It is clear that these benefits were none other than small conveniences afforded the members and that plaintiffs paid proportionately with other members for the advantages they received. When plaintiffs resigned the accounts were balanced. Plaintiffs had given nothing to the association and had received nothing for which payment had not been made. There is no basis in these facts for a claim that plaintiffs surrendered any of their rights as water users.

The court found that the corporation is the sole owner of the water system. There was evidence that it does own the physical property that goes to make up the system. But the evidence also established that plaintiffs have an easement consisting of a right to receive through the system their share of water under the Hillcrest grant upon payment of the cost of production of the same.

The court concluded that plaintiffs are entitled to receive water provided they pay all delinquent bills and render full and complete compliance with all the rules, regulations and by-laws of the corporation, which would include the requirement that they must purchase a share of stock in the corporation. But the judgment, as we have said, does not define plaintiffs' rights; it merely provides that they shall take nothing by their action. The effect of it is to deprive them of all right to enjoy their easement in the use of the water system and to practically destroy their water right.

It will be noticed that when Moorhouse joined Bergman in transferring to the association the use of the water system, it was provided that the Moorhouse property also would be served. It was in evidence that the system serves users other than those in Lot A. It has been operated by defendant corporation for the benefit of all stockholders who are also users of water.

Defendant must reconnect plaintiffs' property with the

system at its own cost. If the parties cannot agree the court should determine whether, and to what extent, plaintiffs should contribute to the future expense of maintenance of the system, insofar as it serves the users in Lot A. The record does not present that question.

The court entered a judgment of nonsuit in favor of defendant Moorhouse. We think there was sufficient evidence from which it could have been inferred that Moorhouse took an active part in procuring the severance of plaintiffs' water line. Under the rule that on a motion for nonsuit the evidence and inferences must be considered in the light most favorable to plaintiffs, the judgment in favor of Moorhouse should be reversed. There are other individual defendants. Their position in the litigation has not been argued specially and therefore has not been considered separately from that of the defendant corporation. Moreover, the court made no findings as to their responsibility for the interference with plaintiffs' rights and that question is not before us for decision.

The judgment is reversed as to all defendants for further proceedings in accordance with the views herein expressed.

Wood (Parker), J., and Vallée, J., concurred.

The opinion was modified to read as above printed and a petition for a rehearing was denied June 1, 1951.

Respondents' petition for a hearing by the Supreme Court was denied July 12, 1951.