[S. F. No. 9280. In Bank.—July 9, 1920.]

## JOHN W. TRABER et al., Petitioners, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

[1] PUBLIC UTILITIES ACT—FINDINGS OF COMMISSION—JURISDICTIONAL FACTS—REVIEW BY COURT.—Notwithstanding the declaration of section 67 of the Public Utilities Act (Stats. 1915, p. 161), that the Railroad Commission's determination of matters of fact are not subject to review, its determination upon the question whether or not the facts existing are sufficient to bring the case within the scope of its powers must be subject to review, so far as they present a question of law bearing upon that subject, and the provision that the "conclusions" of the commission on the facts are final does not apply to facts necessary to the existence of the jurisdiction of the commission to act; but if the evidence in proof of such facts is substantial in character and justifies the inference or conclusion that the facts necessary to the jurisdiction of the commission did exist, then its decision is binding and conclusive.

[2] WATERS AND WATER RIGHTS—CORPORATION ORGANIZED UNDER ACT OF 1853 AND SUPPLEMENTARY ACTS—RIGHT TO SUPPLY WATER FOR PUBLIC USE—REGULATION OF RATES BY RAILROAD COMMISSION.—A canal and irrigation company incorporated in 1871 which declared in its articles that it was incorporated under the act of April 14, 1853 (Stats. 1853, p. 273), and the several acts amendatory thereof and supplemental thereto, but which made no mention of the supplying of water as one of the purposes of the incorporation, is a public utility, and its contracts to furnish water made in 1875 are subject to regulation by the Railroad Commission, in view of the act of May 14, 1862 (Stats. 1862, p. 540), which in effect gives corporations organized under it the power to act as a public service corporation for the supply of water for irrigation, although the act of 1853 gives no such authority.

[3] CORPORATIONS—ACT OF APRIL 2, 1870—ACT OF MAY 14, 1862, NOT REPEALED BY IMPLICATION.—The act of April 2, 1870 (Stats. 1870, p. 660), supplemental to the act of April 14, 1853, did not operate as a repeal by implication of the act of May 14, 1862.

[4] STATUTORY CONSTRUCTION—TWO LAWS UPON SAME SUBJECT.—The repeal of statutes by implication is not favored, and where there are two laws upon the same subject, they must be so construed as to maintain both, if it can be done without destroying the evident intent and meaning of the later act.

[5] CORPORATIONS—EMINENT DOMAIN—EXERCISE OF POWER—PUBLIC USE.—Of necessity property taken under the power of eminent

domain is dedicated to public use, and to that extent a corporation exercising such power is a public utility administering a public service.

[6] WATERS AND WATER RIGHTS — DIVERSION AND SALE BY CORPORATION—RULE PRIOR TO 1879.—Prior to the adoption of article XIV, section 1, of the constitution of 1879, no presumption of a public use arose from the mere fact that a corporation diverted water and agreed to sell it to certain persons.

[7] ID. — CONTRACTS FOR WATER SUPPLY — APPURTENANCE TO LAND — PUBLIC USE.—The fact that contracts were made by a canal and irrigation company declaring that the agreement to supply water should be appurtenant to the respective tracts of land is not inconsistent with the theory of a dedication to public use.

[8] ID.—REGULATION AND CONTROL OF CONTRACTS BY PUBLIC AUTHORITIES.—Such contracts relating to the service of water devoted to public use are subject to regulation and control by the public authorities, whether acting under laws then existing or under laws subsequently enacted.

[9] ID.—USE OF CANAL BY PREVIOUS DITCH OWNERS — CONTRACT FOR FREE WATER SERVICE—ORDER FIXING RATES FOR CONSUMERS—LACK OF UNLAWFUL DISCRIMINATION.—Where a canal and irrigation company in the construction of its canal found it advisable to enter into an agreement with the owners of a previously constructed ditch, which ditch would interfere with the construction, to carry their water to their lands through the canal free of charge, other users of water under contracts with the canal company cannot claim that an order of the Railroad Commission fixing rates for water to be used by them authorized an unlawful discrimination between persons similarly situated.

[10] ID.—EFFECT OF CONTRACT.—Such an agreement was entirely lawful and did not make the canal company the owner of the water it diverted to be carried and delivered to such persons for their lands, but was a mere arrangement whereby the ditch of the company was for that purpose to be used by such persons to carry their water to their lands, the effect being that they had a common use of the ditch although it was under the control of the company.

APPLICATION for a Writ of Certiorari to review an order of the Railroad Commission fixing water rates. Denied.

The facts are stated in the opinion of the court.

J. O. Traber for Petitioners.

---

8. Effect of contract with patrons to preclude regulation of rates of public service corporations, note, L. R. A. 1915C, 282.

Hugh Gordon and Douglas Brookman for Respondent.

SHAW, J.—This is a proceeding in *certiorari*, under the Public Utilities Act, by plaintiffs, for themselves and in behalf of twenty-two other persons interested in like manner, to review an order and decision of the Railroad Commission made on June 6, 1919, fixing rates to be charged by the Fresno Canal and Land Corporation for water supplied from its canal for the irrigation of land. The ground for review is that the Fresno Land and Canal Corporation is not a public utility, at least so far as plaintiffs' rights to water are concerned; that the respective rights of the plaintiffs to the water are private rights appurtenant to their respective tracts of land, and, consequently, that the commission is without power over them, and may not fix rates different from those fixed by the respective contracts between plaintiffs and the predecessor in interest of said corporation. It is also claimed that the order is void because it authorizes the Canal Corporation to make an improper discrimination in the rates charged.

The Fresno Canal and Land Corporation was incorporated on January 5, 1917. It thereupon took over the properties and functions of the Fresno Canal and Irrigation Company, and ever since that time it has been operating the large water system in Fresno County previously operated by the last-named corporation. In the year 1917 it made two applications to the Railroad Commission under section 32 of the Public Utilities Act (Stats. 1915, p. 132), asking said commission to investigate the condition of the business carried on by said corporation and make an award regulating and fixing the rates to be charged by said corporation for the service of water by it by means of said water system. On June 6, 1919, the commission made its award and decision in the matter of said applications, declaring that the corporation should thereafter charge for the service of water at the rate of two hundred dollars per year for each 160 acres of land served. The plaintiffs, in connection with other persons, numbering twenty-four in all, had been previously receiving water from the corporation under contracts made in 1875 with its predecessor in interest, providing that they should receive water at the rate of $25 annually for each quarter-section served. The object of the

present action is to annul said order, so far as these parties
are concerned.

Section 67 of the Public Utilities Act authorizes this pro-
ceeding in review. It provides that the review shall not be
extended further than to determine whether the Commis-
sion has regularly pursued its authority and whether or not
it has violated any constitutional right of the petitioner. It
also provides that the findings and conclusions of the com-
mission on questions of fact shall be final and not subject to
review. The first duty of the commission with respect to
such applications was to inquire into and determine whether
or not the facts existed that were necessary to confer upon
it jurisdiction to act in the matter. [1] Notwithstanding
the declaration of section 67 that the commission's deter-
mination of matters of fact are not subject to review, it
must be held that its determination upon the question
whether or not the facts existing are sufficient to bring the
case within the scope of its powers must be subject to re-
view, so far as they present a question of law bearing upon
that subject, and that the provision that the "conclusions"
of the commission on the facts are final does not apply to
facts necessary to the existence of the jurisdiction of the
commission to act. (*Del Mar etc. Co.* v. *Eshleman,* 167 Cal.
677, [140 Pac. 591, 948].) But if the evidence in proof of
such facts is substantial in character and justifies the in-
ference or conclusion that the facts necessary to the juris-
diction of the commission did exist, then, under the general
principles of law regarding the proceeding in *certiorari,* its
decision as to the effect of such evidence is binding and con-
clusive on the reviewing court. (*Farmers' etc. Bank* v.
*Board of Equalization,* 97 Cal. 325, [32 Pac. 312]; *In re
Grove Street,* 61 Cal. 453; *Ex parte Sternes,* 77 Cal. 162,
[11 Am. St. Rep. 251, 19 Pac. 275]; *De Pedrorena* v. *Su-
perior Court,* 80 Cal. 145, [22 Pac. 71]; *Cahill* v. *Superior
Court,* 145 Cal. 44, [78 Pac. 467]; *Grannis* v. *Superior
Court,* 146 Cal. 255, [106 Am. St. Rep. 23, 79 Pac. 891].)
Our consideration of the facts presented must, therefore, be
governed by this principle.

The Public Utilities Act and the constitution (sec. 23, art.
XII) undoubtedly give the commission power to make
orders prescribing the rates to be charged by corporations
engaged in operating a system of waterworks or canals for
the distribution of water dedicated to public use. If said

Canal Corporation was so engaged and the water it agreed to supply, and was supplying, to the plaintiffs for their land was a part of the water so dedicated to public use, the power of the commission to make the order is clear. The rights of these parties arise from contracts made with the Fresno Canal and Irrigation Company, and the inquiry relates exclusively to the character and business of that company and its water supply, and the nature and effect of those contracts.

We think the evidence was sufficient to sustain the conclusion of the commission that the company last named was a public utility at the time these contracts were made, and that the water to be supplied by it in pursuance of said contracts was a part of the water it had dedicated to public use.

The Fresno Canal and Irrigation Company was incorporated on February 16, 1871. Paragraph III of its original articles stated that it was formed for the purpose of constructing canals out of Kings River with which to supply water for irrigation to lands along and near the line of its canals and to collect rents for the use of the water it supplied. In May, 1871, said paragraph III was amended by eliminating the foregoing provisions and stating in lieu thereof that the corporation was formed to erect dams or other works in the channel of Kings River and its branches at points near and above the town of Centerville, and for the construction and enlargement of canals out of Kings River and to continue said canals along such routes as should be found most feasible across Fresno County in every available direction. Nothing was said in the amendment about supplying water for irrigation or for any other use to any person or about charges or rates for waters supplied. The articles also declared that the company was organized under the act of April 14, 1853, "and the several acts amendatory thereof and supplemental thereto."

The act of April 14, 1853, provided for the organization of corporations, but not for corporations for supplying water. (Stats. 1853, p. 87, G. & S., p. 273.) The act of May 14, 1862, which was supplemental to the act of 1853, provided that corporations could be formed under the act of 1853 for "the construction of canals, for the transportation of passengers and freights, or for the purpose of irrigation or water power, or for the conveyance of water for

mining or manufacturing purposes, or for all of such pur-
poses.'' (Stats. 1862, p. 540.) It also provided that such
corporations should have power ''to establish, collect and
receive rates, water rents, or tolls, *which shall be subject to
regulation by the board of supervisors,''* and also the power
to exercise the right of eminent domain by acquiring land
or other property necessary for its canals by condemnation
in the mode prescribed by the railroad act of 1861. (Stats.
1861, p. 618, secs. 22–39.) The declaration in its articles
that said corporation was formed under the act of 1853 and
the several acts supplemental thereto includes the act of
1862 aforesaid as one of the acts under which it was organ-
ized. This act, in effect, gives the corporations organized
under it the power to act as a public service corporation
for the supply of water for irrigation. In *Price* v. *River-
side etc. Co.,* 56 Cal. 431, it was decided that ''every cor-
poration deriving its being from the act above cited (the
act of 1862) has impressed upon it a public trust—the duty
of furnishing water, if water it has, to all those who come
within the class or community for whose alleged benefit it
has been created. . . . The power—in its nature a public
power—and the public duty are correlative. The duty
exists without any express statutory words imposing it
wherever the public use appears.'' [2] It is, therefore,
clear that the company, in so far as it derives its powers
from the act of 1862, was a corporation of the class now
known and described as a public utility, and one which,
with regard to public service it carries on, is subject to
regulation by the Railroad Commission as provided in the
Public Utilities Act.

Another act supplemental to the act of April 14, 1853, is
the act of April 2, 1870. (Stats. 1869–70, p. 660.) (By an
obviously clerical error it refers to the previous act as the
act of April 14, 1863.) This act repeals all acts and parts
of acts in conflict with its provisions. (Section 13.) The
plaintiffs contend that the Fresno Canal and Irrigation
Company must be deemed to have been formed under the
later act alone. Section 1 of the act of 1870 is in substan-
tially the same words as section 1 of the act of 1862 above
quoted, and the subsequent provisions of the act are similar
to those of the act of 1862, except that instead of referring
to the Railroad Act of 1861 for the mode of condemning
private property for corporate purposes, the act itself (sec-

tions 4 to 11), prescribes the mode, and with the further exception that it contains nothing corresponding to section 3 of the act of 1862, the section providing that the rates established by a company formed under it shall be "subject to regulation by the board of supervisors," and authorizing such corporations to make rules regulating the distribution of its water and the like. The argument is that these omissions operate as a repeal of those parts of the act of 1862 which in *Price* v. *Riverside, supra,* were held to make the corporations formed under that act public utilities, and hence that the Fresno Canal and Irrigation Company had authority to act as a corporation for the private purpose of diverting, distributing and selling water for its own profit, free from public regulation of any kind.

[3] We do not think the act of 1870 operated as a repeal by implication of the act of May 14, 1862. [4] The repeal of statutes by implication is not favored. The rule is "that where there are two laws upon the same subject, they must be so construed as to maintain both, if it can be done without destroying the evident intent and meaning of the latter act." (*Merrill* v. *Gorham,* 6 Cal. 42; *Hilton* v. *Curry,* 124 Cal. 87, [56 Pac. 784].) The act of 1870 expressly repeals all parts of other acts, which are "in conflict" with it. The provisions of section 3 of the act of 1862 do not in any manner conflict with the act of 1870, but are entirely consistent therewith. Hence there is no express repeal thereof. Nor do the provisions of the later act show that it was intended as a complete substitute and so to operate as a repeal of the earlier act, under the rule applied in *Mack* v. *Jastro,* 126 Cal. 132, [58 Pac. 372]. Both statutes were in force when said company was organized, and it must be considered as a company formed under both statutes and as having, potentially at least, the powers conferred by both.

The act of 1870 confers authority to exercise the power of eminent domain. This would be a taking of private property for public use. (Const. 1849, art. I, sec. 8.) [5] Of necessity, the property so taken would be dedicated to public use, and to that extent at least the corporation taking it would be a public utility administering a public service. But it does not appear that the Fresno Canal and Irrigation Company took any of its property in that manner, and it may be conceded that the act of 1870 might

very reasonably be construed to authorize the formation of a corporation to appropriate, distribute, and sell water without dedicating it to public use. It is to be noted that these transactions took place prior to the adoption of the constitution of 1879, declaring that the use of all water appropriated for sale, rental, or distribution is a public use. (Article XIV, section 1.) **[6]** At that time, therefore, no presumption of a public use arose from the mere fact that the corporation diverted water and agreed to sell it to certain persons. If there were no other evidence of a dedication of the water to such public use, it might be conceded that the proof before the commission was insufficient to show jurisdiction. But there was other evidence, consisting of acts and declarations, which were sufficient in that respect, as we will proceed to show.

After the Irrigation Company had completed its dam, it was necessary to construct a canal through the higher banks of Kings River in order to take the water to lands susceptible of irrigation. The company was without funds wherewith to do so. It proposed to the plaintiffs and those whom they represent, twenty-four in number, that if they would excavate the canal through said banks, the company would thereupon execute water-right contracts to each person so assisting, for the delivery of one cubic foot of flowing water per second for each quarter-section of land, at an annual rate of $25. The proposal was accepted and said parties excavated the canal under this agreement. Thereupon the company executed to said twenty-four persons the contracts now under consideration. They were all in the same form. They each recite that it was agreed that the company might sell one thousand water rights of one cubic foot each, and that if the water in its canals fell short of one thousand cubic feet, the water it had should be distributed proportionally to the respective purchasers of such one thousand water rights. At the hearing one of the plaintiffs testified that at the time the negotiations for these contracts were under way, Mr. Church, the manager of the company, stated that the company had a thousand cubic feet of water and intended to dispose of all of the thousand water rights; that it was not for disposition to any particular person but that "anybody was to have it as wanted it," and that "the water was for sale and if any man had the money he could get it until the thousand was disposed of." It also

appeared that either before or after said contracts were
made the company was willing to, and actually did, sell all
said water rights to anyone who would sign the form of
contract prepared by the company. It is apparent that the
company made no limitation upon the persons who should
buy except such as were necessary for the convenient de-
livery of the water from its canals to the land of such pur-
chaser. The contracts provided that the company was to
furnish the water at its main canal or some branch thereof,
and was to place a gate therein to allow the water to flow
into a side ditch to be built by the purchaser from his land
to said gate, which side ditch, after construction, should be
under control of the company and become one of its branch
ditches with the right to use and enlarge the same, provid-
ing such act did not interfere with the delivery of water to
said land. Subject to these and similar restrictions, depend-
ing upon the situation of the particular tract, the water was
for sale to all who would apply. From all this evidence the
commission concluded that the conduct of the company in
disposing of its water in this manner amounted to a dedica-
tion thereof to public use. We think the evidence was suffi-
cient to establish that fact. (*Thayer* v. *California Dev. Co.*,
164 Cal. 128, [128 Pac. 21].) The offer of the company
was a general offer to any and all persons who should apply
for the water upon its terms for their lands. Whether in
all cases such an offer would constitute a dedication to
public use or not, it is clear that evidence of such offer and
acceptance is sufficient to justify a finding of such dedica-
tion. As soon as the contracts were all sold the persons
making the purchase and the lands to which the water was
to be applied would comprise the portion of the public en-
titled to the use and to whose use the water was dedicated,
so far as it was necessary thereto.

[7] The fact that contracts were made declaring that
the agreement to supply water should be appurtenant to
the respective tracts of land is not inconsistent with the
theory of a dedication to public use. (*Fresno C. & I. Co.
v. Park,* 129 Cal. 437, [62 Pac. 87].) [8] Such contracts
relating to the service of water devoted to public use are
subject to regulation and control by the public authorities,
whether acting under laws then existing or under laws sub-
sequently enacted. (*Southern Pac. Co.* v. *Spring Valley*

*Water Co.,* 173 Cal. 298, [L. R. A. 1917E, 680, 159 Pac. 865].)

In this view of the case the point made by the plaintiffs that the amendment to its articles eliminated the pre-existing declaration that the company was organized to furnish water and collect rates for its use becomes immaterial. By the acts under which the company was formed it had the power to sell water for public use whether its articles so declared or not.

[9] The objection that the order of the Railroad Commission authorized an unlawful discrimination between persons similarly situated with regard to the use of the water is not well taken. It appears that at and before the time the company was constructing its diversion works and preparing for the construction of its canal certain other persons owning some one thousand seven hundred acres of land had constructed a ditch and had taken water from Kings River therein to their lands for the irrigation thereof, and claimed a prior right to do so, both to the water taken and to the use of the ditch through which it was carried. As this ditch would interfere with the construction of the canal laid out by the company, it became advisable to make some arrangement with said persons for a common use. Accordingly it was arranged that the company should construct its canal as laid out and that thereafter it should take out of the river at its headgate the quantity of water previously diverted by said persons and should carry the same to a designated place on its canal and there deliver it to said other persons into a canal to be constructed by them leading to their lands, and that in view of the mutual concessions of the parties, the company should make no charge for such carriage of the water. This, in substance, was the arrangement made at that time, and under it the company has ever since carried the water from the river to said canal of said other persons free of charge as it had agreed to do. The order of the Railroad Commission did not expressly authorize this to be continued, but it did not provide that it should be discontinued, and this constitutes the discrimination complained of. [10] . The arrangement made between the company and these persons was entirely lawful, and it did not make the company the owner of the water it diverted from the river to be carried to and delivered to these persons for their lands. It was a mere arrangement whereby

the ditch of the company was for that purpose to be used by the other persons to carry their water to their lands. The effect was that they had a common use of the ditch although it was under the control of the company.

Upon the filing of the petition herein the court did not order a writ of review to issue and return to be made, but merely made an order that the respondent show cause why such writ should not issue. We are unable to perceive any reason for the issuance thereof.

The petition for a writ of review is denied.

Olney, J., Sloane, J., Lennon, J., Wilbur, J., Lawlor, J., and Angellotti, C. J., concurred.