[L. A. No. 14451. In Bank.—July 6, 1936.]

SOUTHERN CALIFORNIA EDISON COMPANY, LTD. (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA and CITY OF TULARE (a Municipal Corporation), Respondents.

738

Roy V. Reppy, B. F. Woodard, E. W. Cunningham and Gail C. Larkin for Petitioner.

Earl & Hall & Gerdes, as *Amici Curiae* on Behalf of Petitioner.

Louis Bartlett, Israel H. Ham, Arthur T. George, Ira H. Rowell and Roderick B. Cassidy for Respondents.

Claude L. Rowe, City Attorney (Fresno), as *Amicus Curiae* on Behalf of Respondents.

SHENK, J.—By this proceeding the petitioner seeks to annul the decision and order of the Railroad Commission purporting to fix the just compensation to be paid by the City of Tulare for certain lands, properties and rights of the petitioner, constituting the electrical distributing system of the petitioner within that city.

The jurisdiction of the commission to make a decision such as the one here complained of is conferred by article XII, section 23a, of the California Constitution, which reads as follows: ''The railroad commission shall have and exercise such power and jurisdiction as shall be conferred upon it by the legislature to fix the just compensation to be paid for the

taking of any property of a public utility in eminent domain proceedings by the state or any county, city and county, incorporated city or town, municipal water district, irrigation district or other public corporation or district, and the right of the legislature to confer such powers upon the railroad commission is hereby declared to be plenary and to be unlimited by any provision of this Constitution. All acts of the legislature heretofore adopted which are in accordance herewith are hereby confirmed and declared valid.''

Pursuant to the power thus conferred, the legislature has provided in the Public Utilities Act (Stats. 1915, p. 115, as amended; Stats. 1917, p. 261) the procedure to be followed by the commission in condemnation cases. Section 47 provides for two types of proceedings, designated as petitions of the first and second class. In petitions of the first class, the petitioning governmental subdivision sets forth its intention of taking the property described in the petition. Presumably, under this type of petition, the city is able to finance the purchase without a bond issue. In petitions of the second class, the intention of the governmental subdivision extends no further than to the initiation of the proceedings so as ultimately to submit to the voters the question whether the city shall acquire the property at the values fixed by the commission. In connection with petitions of this class it is assumed that a bond issue is necessary to finance the proposed purchase. The proceeding here involved falls within the latter class. The commission has, by its order, fixed the price to be paid by the respondent city and the question whether the property is actually to be taken remains to be decided by a vote of the people. If it be later determined, by a proper vote, that the property shall be taken, the valuation fixed by the commission in this proceeding, under section 47b (8) of the act, will be conclusive on the petitioner in a condemnation suit which may later be filed in the superior court, unless the order of the commission be set aside in the present proceeding.

The property sought to be taken by the city, and which is described in detail in the petition filed with the commission, consists of the petitioner's electric lines, franchises, property and business within the City of Tulare. This property comprises the distributing system of the petitioner and does not include any generation plants, all of which are located outside of Tulare. The distributing system thus

sought to be condemned is part of the entire system of the petitioner, the major portion of which is also located outside of Tulare.

The commission found compensation as follows: For property rights to be taken, not including severance damages, $200,000; for certain severance damages, $28,700. The separate awards were made under the terms of section 47b (4) of the act, which require the compensation for the property to be fixed by the commission "in a single sum" and severance damages "shall be found and stated separately".

At the outset we are called upon to define the powers of this court on this review in the light of the enactment by the legislature in 1933 of an amendment to section 67 of the Public Utilities Act. (Stats. 1933, p. 1157.)

Prior to the amendment the section provided in its pertinent parts that within thirty days after the application for a rehearing by the commission has been denied, "the applicant may apply to the Supreme Court of this state for a writ of *certiorari* or review (hereinafter referred to as a writ of review), for the purpose of having the lawfulness of the original order or decision, or the order or decision on rehearing, inquired into and determined. . . . The review shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the Constitution of the United States or of the State of California. The findings and conclusions of the commission on questions of fact shall be final and shall not be subject to review; such questions of fact shall include ultimate facts and the findings and conclusions of the commission on reasonableness and discrimination. The commission and each party to the action or proceeding before the commission shall have the right to appear in the review proceeding. Upon the hearing the Supreme Court shall enter judgment either affirming or setting aside the order or decision of the commission.

The amendment of 1933 added, immediately after the above-quoted language, the words, "except as hereinafter provided", and then at the end of the section appended the following paragraph:

"In any proceeding wherein the validity of any order or decision is challenged on the ground that it violates any

right of petitioner under the Constitution of the United States, the Supreme Court shall exercise an independent judgment on the law and the facts, and the findings or conclusion of the commission material to the determination of the said constitutional question shall not be final.''

The foregoing amendment no doubt was enacted in view of the contention often made in this court and in the federal courts that section 67 was unconstitutional in that it did not accord a litigant the opportunity to obtain in a judicial tribunal an independent review of the law and the facts when an order or decision of the commission was challenged on federal constitutional grounds. Its enactment appears to have been in furtherance of a movement instituted at least as early as 1931 and later fostered by the public utility regulatory commissions in the several states to encourage the enactment by Congress of a measure to deprive the District Courts of the United States of jurisdiction to enjoin the enforcement of orders of any state administrative board or commission fixing rates to be charged by public utilities affecting only intrastate commerce ''where a plain, speedy and efficient remedy may be had at law or in equity in the courts of such state''. Such a measure was pending in Congress when the amendment to section 67 was enacted in 1933, and was, in 1934, adopted as an amendment to the Judicial Code. (48 Stats. at Large, 775; U. S. C., Title 28, sec. 41.) The amendment to section 67 in 1933 was enacted apparently because of certain language found in decisions of the United States Supreme Court, the first of which is stated to be *Ohio Valley Water Co.* v. *Ben Avon Borough,* 253 U. S. 287 [40 Sup. Ct. 527, 64 L. Ed. 908]. That case involved a review of a rate fixing order of the Pennsylvania public service commission. After that commission had taken evidence, valued the utility's properties, and made its order fixing the rates, the utility appealed to the superior court, claiming that the commission's valuation was much too low and that the order would deprive it of a reasonable return and thereby confiscate its property. The superior court reviewed the record, appraised the property at a much higher figure, reversed the order of the commission and remanded the proceedings with directions to fix rates sufficient to provide an adequate return. On appeal to the Supreme Court of the state the judgment of the superior court was reversed, the

Supreme Court concluding as follows: "A careful examination of the voluminous record in this case has led us to the conclusion that in the items wherein the superior court differed from the commission upon the question of value, there was merely the substitution of the former's judgment for that of the commission, in determining that the order of the latter was unreasonable." In reviewing the opinion and judgment of the state Supreme Court the United States Supreme Court stated: "Looking at the entire opinion we are compelled to conclude that the supreme court interpreted the statute as withholding from the courts power to determine the question of confiscation according to their own independent judgment when the action of the commission comes to be considered on appeal." The federal Supreme Court further indicated definitely in that case that the state of Pennsylvania had, by statute, conferred power upon the superior court judicially to hear and determine all objections to the order on appeal, and that but for the opinion of its Supreme Court the state appeared to have accorded due process to the complaining party. But with the opinion of the state Supreme Court, as construed by the nation's highest tribunal, standing in the way, that state had, nowhere along the line, provided for a judicial determination on the question of confiscation. In the course of its opinion the Supreme Court of the United States further stated at page 289: "The order here involved prescribed a complete schedule of maximum future rates and was legislative in character. (*Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210 [29 Sup. Ct. 67, 53 L. Ed. 150]; *Lake Erie & Western R. R. Co.* v. *State Public Utilities Com.*, 249 U. S. 422, 424 [39 Sup. Ct. 345, 63 L. Ed. 684].) In all such cases, if the owner claims confiscation of property will result, the state must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment."

The foregoing announcement in the Ben Avon case was later cited with approval. (*Bluefield Water Works etc. Co.* v. *Public Service Com.*, 262 U. S. 679, 689 [43 Sup. Ct. 675, 67 L. Ed. 1176]; *Lehigh Valley R. Co.* v. *Board of Public Utility Commrs.*, 278 U. S. 24, 29, 36 [49 Sup. Ct. 69, 73 L. Ed. 161, 62 A. L. R. 805].)

The declaration of the court in the Ben Avon case to the effect that a state must provide a "fair opportunity" for the submission of the issue of confiscation in rate cases "to a judicial tribunal for determination upon its own independent judgment as to both law and facts" in order to satisfy the due process clause of the Fourteenth Amendment, was interpreted by the court in the above cited Lehigh Valley R. Co. case as requiring, on behalf of the utility, a "proper opportunity for an adequate independent judicial hearing as to confiscation on the law and the facts".

The question then is: Had the state of California, either by its Constitution or by statute, effectually precluded this court from exercising its own independent judgment on the law and the facts on a review of a Railroad Commission order appropriately challenged, as depriving a party of his rights under the federal Constitution. If this court was not so precluded prior to the amendment of section 67, due process was then accorded (see *Crowell* v. *Benson*, 285 U. S. 22, 45 [52 Sup. Ct. 285, 76 L. Ed. 598]), and the amendment of 1933 added nothing which was not theretofore a part of our state law.

█ It is apparent from the history of the 1933 amendment to section 67 that its purpose was to meet any objection that might be raised to any public utility rate order made by the respondent commission on the ground of confiscation or lack of due process, in the event the proposed federal legislation above referred to be enacted. It is to be noted that the amendment uses language almost identical with that found in the Ben Avon case. It must also be noted that the terms of the amendment are general in their scope, and if applied literally would encompass the order or decision of the commission in any and every proceeding before the commission where the order or decision is challenged on the ground that it violates any right of the party affected thereby under the Constitution of the United States. Of this more will be said later.

█ On the immediate question as to the effect of the amendment on the powers of the court in rate regulation proceedings, it must be concluded that said amendment did not, in any substantial degree, change the rules in force prior thereto. The law of the state, both constitutional and statutory, before 1933, and as construed by this court, was at pains

to preserve to the complaining party the right to challenge in this court any order or decision of the commission on federal constitutional grounds when, of course, such challenge could appropriately be made in the proceeding. ██ As to the rate regulation orders of the commission affecting transportation companies, the Constitution, by amendment to section 20 of article XII in 1911, effectually preserved to the utility the right to a review in court of the question whether the rates ordered by the commission would result in confiscation of property. While the Constitution did not in such express language preserve the same right to other utilities whose rates were subject to regulation by the commission, the Public Utilities Act, adopted pursuant to constitutional authority, did by section 67 preserve to the complaining utility the right to a review and determination in this court of the question "whether the commission has regularly pursued its authority", and "whether the order or decision under review violates any right of the petitioner under the Constitution of the United States or of the State of California". In passing upon the questions thus presented and required to be determined this court must necessarily pass upon the merits thereof as to both the law and as to the facts presented in the review proceeding. It is "the primary duty of every court to dispose of cases according to the law and the facts." (*Mast, Foos & Co.* v. *Stover Mfg. Co.*, 177 U. S. 485, 488 [20 Sup. Ct. 708, 44 L. Ed. 856].) Prior to 1933 it was the function of this court to thus dispose of cases coming here from the commission for review in which federal constitutional questions were appropriately raised. In thus disposing of them the court acted judicially and the determination thereof was on the merits even though the order of the court be a denial of an application for review. Such an order of this court fully complies with federal constitutional requirements as interpreted by the Supreme Court of the United States. (*Napa Valley Elec. Co.* v. *Railroad Com.*, 251 U. S. 366 [40 Sup. Ct. 174, 64 L. Ed. 310].)

██ Although section 67 assumes to make the findings and conclusions of the commission on questions of fact final and not subject to review, this court has excluded from the operation of such provision its apparent finality when federal constitutional objections are available to the complaining party. (*Del Mar Water etc. Co.* v. *Eshleman,* 167 Cal. 666

[140 Pac. 591, 948]; *Traber* v. *Railroad Com.*, 183 Cal. 304 [191 Pac. 366]; *Sutter-Butte Canal Co.* v. *Railroad Com.*, 202 Cal. 179 [259 Pac. 937]; Id., 279 U. S. 125 [49 Sup. Ct. 325, 73 L. Ed. 637]; *Atchison etc. Ry. Co.* v. *Railroad Com.*, 209 Cal. 460 [288 Pac. 775]; Id., 283 U. S. 380 [51 Sup. Ct. 553, 75 L. Ed. 1128]; *Western Canal Co.* v. *Railroad Com.*, 216 Cal. 639 [15 Pac. (2d) 853]; Id., 289 U. S. 742 [53 Sup. Ct. 688, 77 L. Ed. 1489].) ▮ In this connection it should be observed that under the state Constitution and the Public Utilities Act, the powers of this court in a proceeding to review an order or decision of the commission are not limited to the considerations incident to the writ of *certiorari* or review mentioned and provided for in section 4 of article VI of the Constitution and sections 1067–1077 of the Code of Civil Procedure. (*Pacific Tel. etc. Co.* v. *Eshleman,* 166 Cal. 640 [137 Pac. 1119, Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652].)

▮ The proceedings on review from the Railroad Commission, as contemplated to be affected by the amendment to section 67 in 1933, were without any doubt such proceedings as grew out of the exercise by the commission of its legislative functions, such as the fixing of rates of public utilities within its jurisdiction. As to those proceedings the law of the state theretofore enabled this court to consider and pass upon federal constitutional questions and therefore afforded due process.

▮ There is another field of extensive scope in which the respondent commission exercises its powers and wherein the action of the commission is brought into question before this court. In this field are the executive and administrative orders of the commission in connection with which the commission exercises a wide discretionary power, such as in the granting, withholding and canceling of permits and countless other orders of regulation and control. Within this classification it quite often happens that the complaining party seeks redress in this court on alleged federal constitutional grounds, when in fact there is no such question substantially involved. In such cases it may not be successfully contended that this court, on a review proceeding involving the action of the commission, should be a trier of disputed questions of fact, already resolved by the commission. If the mere challenge on federal constitutional grounds was intended by the amend-

ment of 1933 to be sufficient to take the case out of the rule that the findings and conclusions of the commission in such cases should be final and beyond review, then we would have grave doubt of the power of the legislature thus to transfer to this court the traditional functions of the commission. But where a substantial federal constitutional question is involved and appropriately raised, the rule is and should be as it was before the amendment to section 67 in 1933.

There is still another field in which the respondent commission exercises its powers under the Constitution. Those powers are conferred by section 23a of article XII adopted in 1914. It is under this section, and the legislative enactment in pursuance thereof (sec. 47, Public Utilities Act), that the commission proceeds to fix the just compensation to be paid for the taking of any property of a public utility by the state or by a city or by any other governmental agency mentioned in the constitutional section. In the exercise of this power the commission acts judicially. (*Marin Water etc. Co.* v. *Railroad Com.*, 171 Cal. 706 [154 Pac. 864, Ann. Cas. 1917C, 114].) The proceeding is one in eminent domain wherein the commission is set up constitutionally as a special judicial tribunal to hear and determine the question of values submitted to it. No question of lack of due process is present, for due process is inherent in such a proceeding before the commission, whose determination as to values becomes as final and binding as in any other court of first instance unless appropriately and successfully challenged. (*Marin M. W. Dist.* v. *Marin E. etc. Co.*, 178 Cal. 308 [173 Pac. 469].) Obviously it was not the action of the commission exercising this judicial function that was intended to be affected by the amendment to section 67 in 1933. If it may be said to have attempted to do so, it is clear that it was not within the power of the legislature to transfer to this court the power *nisi prius* specially granted to the Railroad Commission by section 23a of article XII of the Constitution. On a review of the action of the commission in such a proceeding in eminent domain the complaining party may challenge such action of the commission on federal constitutional grounds, but the findings of the commission on the issues of fact involved are like the findings of a court or the general verdict of a jury. (*Pacific Gas & Elec. Co.* v. *Devlin*, 188 Cal. 33 [203 Pac. 1058].)

Our conclusion on this branch of the proceeding is, as contended by the respondent commission, that the enactment in 1933 of the amendment to section 67 of the Public Utilities Act has not materially affected the procedure theretofore followed by this court in the review of orders and decisions of the Railroad Commission.

We turn now to other points raised by the parties, having in mind that the proceeding here for review belongs to the class of controversies in which the commission has exercised a judicial function.

It is insisted by the petitioner that in fixing just compensation for the property to be taken and particularly in fixing damages to business as a part of severance damages, the commission failed to give proper consideration to the earning capacity of the property sought to be condemned, and made its award on the theory that in the future the property could earn but between seven to nine per cent, when the record shows an earning capacity under prevailing rates of twenty per cent or more per annum.

■■■ Counsel for the City of Tulare contend that no severance damages for interference with business should be allowed, relying on the decision of this court in *Oakland* v. *Pacific Coast Lumber etc. Co.*, 171 Cal. 392 [153 Pac. 705], where it was said that the law at that time did not provide for damages to business as a factor in eminent domain proceedings. In commenting on the contention that interference with business should be paid for, it was stated at page 398: "We are not to be understood as saying that this should not be the law when we do say that it is not the law. It is quite within the power of the legislature to declare that a damage to that form of property known as business or the good will of a business should be compensated for, but unless the Constitution or the legislature has so declared, it is the universal rule of construction that an injury or inconvenience to business is *damnum abseque injuria* and does not form an element of the compensatory damages to be awarded." That case was decided in 1915. In 1917 the legislature added section 47 (b) 4 to the Public Utilities Act (Stats. 1917, p. 264), providing that "if the commission finds that severance damages should be paid, the just compensation for such damages shall be found and stated separately". The deficiency in the

law in 1915 was thus supplied in 1917 and the contention of the city is no longer available.

As is quite usual in cases of this sort, the testimony produced by the parties was highly conflicting as to the total just compensation, ranging from considerably under $200,000 to over $1,000,000. The record discloses that the commission based its award upon the testimony of Lester Ready, engineer for the condemnor and formerly chief engineer for the commission. On his testimony the commission found that the just compensation to be paid to the company for the property and right sought to be condemned is the sum of $200,000 "including going value and franchise rights", and that the amount of severance damages which the city should pay is the sum of $28,700, making a total of $228,700; and that "no allowance for idle plant is included in the severance damage found".

The petitioner contends that in estimating damage to business the actual earnings of the company in the City of Tulare under rates fixed by the commission should have had controlling significance. The record shows that under those rates, during the year ending June 30, 1932, the company earned about twenty per cent on the property which the city desires to condemn, with every indication that under prevailing rates the company would continue to earn that much or more. The petitioner insists that it is entitled to an estimate of damages based on a capitalization of those earnings. Basing their estimates on this theory witnesses for the company, George Eberle, Fred B. Lewis and Arthur Kelly, fixed the total just compensation which should be paid for the property, assuming the city's load to be retained by the company, to be $433,700, $464,700, and $553,700 respectively, and, assuming the city's load as lost to the company, to be $843,700, $947,700 and $1,003,700 respectively.

The city's witness Ready expounded at length to the commission his theory in arriving at the figure of $228,700 as the total just compensation. He testified that his estimates were arrived at in view of the real question in the determination of just compensation, viz., what is the fair value or worth in dollars of the property and rights of the company within the City of Tulare covered by the application? He recognized that a necessary element in ascertaining such value is the productiveness of the property in the hands of

the owner. This he was required to do. (*Monongahela Nav. Co.* v. *United States,* 148 U. S. 312 [13 Sup. Ct. 622, 37 L. Ed. 463] ; *Great Northern Ry. Co.* v. *Weeks,* 297 U. S. 135 [56 Sup. Ct. 426, 80 L. Ed. 532].) In recognition of this necessary factor he took into consideration such productiveness on the basis of a reasonable as distinguished from the actual return on the investment. He estimated this reasonable return to be approximately seven or seven and one-half per cent per annum. The petitioner concedes that if it once be assumed that the property cannot and does not earn more than a seven and one-half per cent return, Ready's method of computation is sound.

That the contentions of the parties may be better understood, it is well to make brief reference to the background of rate fixing for electric utilities in this state.

Generally speaking, electric distribution by private companies has not proceeded in this state in municipalities as a unit. Electric distribution in the cities has developed along with interconnected development in the farming territory surrounding the city, most private utility systems embracing both urban and rural territory. Moreover, most private utility systems are not limited to one city with its surrounding hinterland, but extend over several counties. The system of the petitioner covers wholly or in part ten contiguous counties in the southern part of the state. In over twenty years of regulation the commission has developed a very definite policy of rate fixing for such utilities, under which electric rates are not fixed for each unit of the system, but are fixed for the system as a whole, including both urban and rural territory. There have been minor variations from this general policy, but they are relatively unimportant. It has apparently been the theory of the commission that it is sound state economics to require that the city consumers of an electric utility should bear a greater portion of the burden than the rural consumers. In other words, the commission in fixing rates has determined what the rates must be on the system as a whole, in order to give the utility a fair return on its investment. Consideration has been given by the commission in the past to the fact that under this method the rate of return on the investment in the cities will be very high, while the rate of return on the rural investment will be very low. Thus in many cases the commission has fixed

rates for a utility system under which the rate of return on the investment in urban property is, as here, as much as twenty per cent per annum in order to make up the loss or lower rate of return in the investment in rural property. Apparently the basis of this theory of rate fixing is that the extension of electrical service to the rural territory surrounding the cities, even at the expense of the urban consumers, is to the benefit of the cities and the state as a whole. For the past twenty years or so the commission has fixed electric utility rates of such large companies as the petitioner on that basis.

There could be no possible objection to the theory of the witness Ready in arriving at his conclusions if the property and rights to be taken belonged to an independent owner as a single unit and not connected with a larger system located outside of the condemning city. ▮ The question is: Does the constitutional requirement of just compensation demand that the factor of severance damages by way of damages to business be resolved on the basis of actual earning potentiality when such actual earnings amount to more than a reasonable return on the investment? In answering the question it is assumed as a general proposition that a seven per cent return on the investment is reasonable. Likewise, it would seem to be true generally that a twenty per cent return is unreasonable, at least from the standpoint of the consumer. The presumption that a rate fixed by a duly constituted regulatory body is reasonable should not be controlling in the light of undisputed evidence to the contrary in a condemnation proceeding. However, the petitioner insists that the usual situation is not here presented; that when, as here, the commission has included a particular unit as a part of a rate structure, and has ascribed to that unit a very high earning capacity, in order that the consumers in other units be favored with rates that admittedly fail to provide an adequate return on the property required to render the service in such other units, it would be unjust to strip from the assets of the utility the property which by the commission's own plan must earn a very high return in order that the whole rate structure be kept in proper balance, without compensating the utility for the loss on a basis of the conceded earning capacity of the property so removed from future earning potentiality.

Whatever merit there may be in the view thus graphically and most strongly stated in favor of the company, as applied to its general situation, there is still another view which must be taken into consideration. We are here dealing with a problem in the condemnation of a specific unit of the property of a public utility corporation. That property is already impressed with a public use. It is possessed by the company subject to the right of the city to acquire it pursuant to the Constitution which insures to the owner just compensation for the property taken and likewise pursuant to other laws of the state which prescribe the rules under which the amount shall be ascertained for the taking of that and similar property. This is not like the property of a strictly private corporation, as to which the productiveness in excess of a reasonable return might be controlling. Here the public has already acquired an interest in the property in the sense that it may insist upon service faithfully and impartially and at no more than reasonable rates. (*Kennebec Water Dist.* v. *City of Waterville,* 97 Me. 185 [54 Atl. 6, 60 L. R. A. 856].) The case just cited contains an interesting and informative discussion on the subject in the condemnation of public utility property. The word "public" used in this connection must be deemed to refer to that portion of the public served by the property here sought to be taken. (*Wisconsin Power & Light Co.* v. *Public Service Com.,* 219 Wis. 104 [261 N. W. 711, 715, 262 Pac. 257].) The element of reasonable rates must, under the authorities and rulings on the subject, enter into a solution of the problem. When so considered it is concluded that it cannot be said as a matter of law that the commission has failed to award just compensation by fixing the item of severance damages in dispute on the basis of a reasonable return. The problem seems to be complicated because of the economic views and actions of the commissioners in this and the other and independent rate-fixing proceeding, also within its jurisdiction. But it would appear to be a mere incident that the same official body which appraises the property for purposes of condemnation has also fixed the rates to be charged to the consumers for the use of said property. If the commission were not vested with this special power in eminent domain and the proceeding were an ordinary one in condemnation in the superior court, we apprehend that the theory in fixing the damages

by reason of loss of business would properly be based on the return from the investment realized in the exaction of reasonable rates. If the results forecast by the petitioner are likely to take place, namely, the charging of rates to rural consumers in excess of what they would be able to pay, or an ultimate loss to the petitioner at an inadequate price of its lucrative properties by piecemeal, the solution of the problem to avoid these results would appear to be at the door of the Railroad Commission in the discharge of its duty as a rate-fixing body to protect the utility against such an impairment of its capital assets as the petitioner now forecasts with apprehension. We are persuaded that its solution should not be injected into this condemnation proceeding. The petitioner is in no position to here insist that for this particular property it be compensated at an exorbitant figure merely because in another and independent proceeding and with other considerations in view, it has been given the benefit of such a high return for the use of the property sought to be condemned. This is true especially in the present proceeding for the reason that the record herein is sufficient to support the conclusion of the commission that with the Tulare unit removed from the operation of its established rates, the company will still receive a reasonable return on the balance of its properties.

Our conclusions are fortified by the fact that so far as we have been able to discover the theory of the petitioner has not been approved by any court, and the commission cases, both here and elsewhere, do not support it. (*Wisconsin Power & Light Co.* v. *Public Service Com.*, *supra;* *Kennebec Water Dist.* v. *City of Waterville, supra; Appleton Water Works Co.* v. *Railroad Com.*, 154 Wis. 121 [142 N. W. 476, Ann. Cas. 1915B, 1160, 47 L. R. A. (N. S.) 770] ; *National Water Works Co.* v. *Kansas City*, 62 Fed. 853 [27 L. R. A. 827] ; *Re Montgomery Hydro-Electric Co.*, (Ill.) Pub. U. Com., P. U. R. 1917C, 224; *City of Charleston* v. *Public Serv. Com.*, 95 W. Va. 91 [120 S. E. 398] ; *Re Application of City of Los Angeles*, 32 C. R. C. 579, wherein this court denied a petition for a writ of review on May 13, 1929, in *Southern California Edison Co.* v. *Railroad Com.*, No. S. F. 13461; *Re Application of City of Los Angeles*, 37 C. R. C. 117, wherein this court denied a petition for a writ of review on July 14, 1932, No. L. A. 13619.) In the two proceedings

before this court last referred to, the petitioner therein, which is the petitioner herein, made the point in each matter that the commission had failed regularly to pursue its authority by refusing to fix compensation by the capitalization of loss in estimated net earnings. The denial of the petition for a writ of review in each case must be deemed a determination of the point against the petitioner's contention. (*Napa Valley Elec. Co. v. Railroad Com., supra.*)

The petitioner further contends that the property sought to be condemned within the corporate limits of the City of Tulare cannot be condemned at all under the authority of *Mono Power Co. v. City of Los Angeles,* 284 Fed. 784, wherein it was held that the city was without power to condemn the property of the power company located wholly without the city and wholly appropriated to the public use of some other municipality, under section 1240 and related sections of the Code of Civil Procedure. This point was made in *Southern California Edison Co. v. Railroad Com.,* L. A. No. 13620, wherein the point was resolved against the petitioner by the denial of a writ of review by this court on July 14, 1932. Furthermore, the question presented to the court in the Mono Power Company case is not involved in this proceeding. Here the property sought to be condemned is located wholly within the limits of the city proposing to condemn. If the petitioner's contentions were to prevail, all of its property in every city, county and town has been, at least since 1915, and now is, exempt from condemnation. Such, of course, is not the case, in view of the many proceedings which have been initiated, and, with the approval of this court, carried to completion since 1915, involving the condemnation of properties of this petitioner and other public utility corporations. (*East Bay Mun. U. Dist. v. Railroad Com.,* 194 Cal. 603, 621 [229 Pac. 949] ; see, also, *Marin M. W. Dist. v. Marin W. & P. Co.,* 178 Cal. 308, 309, 313 [173 Pac. 469].) The Mono Power Company case, therefore, has no application to the situation here presented.

The commission refused to fix any severance damages because of idle plant for two reasons. First, on the record evidence that no damages could reasonably be expected to be suffered thereby. In this connection it appeared without contradiction that there is not and probably will not be any source other than the petitioner's system from which

a supply of electrical current at wholesale can be obtained so advantageously and economically as from the production and transmission facilities of the petitioner; that if the condemnation proceedings be carried to completion those facilities will not be disturbed; that the petitioner had already dedicated its facilities to municipal wholesale service and would be assured of reasonable rates for the connected load, and that the petitioner "could not lose the load even if it so wished". Secondly, that if by any possibility any other source of supply might become available to the condemnee the city had tendered and bound itself to enter into a contract with the petitioner to purchase electric current from the petitioner for the period of seven years at rates to be fixed by the commission; that if such a contract were entered into the petitioner would before the expiration of the seven-year period absorb any possible loss which might accrue because of idle plant. The record may be said to support the conclusion of the commission on the first ground. When both grounds are considered together there would seem to be no question of support for the order excluding from severance damages any allowance for idle plant.

The petitioner further insists that it was deprived of its constitutional rights in that the hearing herein was conducted by one commissioner, who reported to the commission as a whole, the commission rendering the decision and order. Such procedure is expressly provided for in article XII, section 22, of the Constitution of this state, and by section 9 of the Public Utilities Act. The constitutional provision is as follows: "The act of a majority of the commissioners when in session as a board shall be deemed to be the act of the commission; but any investigation, inquiry or hearing which the commission has power to undertake or to hold may be undertaken or held by or before any commissioner designated for the purpose by the commission, and every order made by a commissioner so designated, pursuant to such inquiry, investigation or hearing, when approved or confirmed by the commission, ordered filed in its office, shall be deemed to be the order of the commission."

Section 9 of the Public Utilities Act is to the same effect and further provides: "The evidence in any investigation, inquiry or hearing may be taken by the commissioner or commissioners to whom such investigation, inquiry or hearing

has been assigned or, in his or their behalf, by an examiner designated for that purpose. Every finding, opinion and order made by the commissioner or commissioners so designated, pursuant to such investigation, inquiry or hearing, when approved or confirmed by the commission and ordered filed in its office, shall be deemed to be the finding, opinion and order of the commission.''

The proceeding before the commission in this matter was referred to one of the commissioners for hearing. The evidence of both parties was fully produced before him and transcribed for the benefit of the parties and of the commission as a whole. On this evidence the commissioner so designated rendered his findings, opinion and order, which in turn were approved by a majority of the commission. All of the requirements of the Constitution and of the statute adopted in pursuance thereof appear to have been complied with and due process must be deemed to have been accorded the parties to the proceeding.

The petitioner has called attention to the consolidated cases of *Morgan* v. *United States*, 298 U. S. 468 [56 Sup. Ct. 906, 80 L. Ed. 1288], decided by the Supreme Court of the United States on May 25, 1936, in support of its contention that a sufficient hearing was not afforded to it in the proceeding before the commission by reason of the fact that the whole or a majority of the Commissioners did not sit and hear the evidence upon which the order under attack was based. In the case relied on the appellant Morgan had alleged in his bill of complaint that he had not been given a proper hearing by the secretary of agriculture in a proceeding fixing the maximum rates to be charged by market agencies for buying and selling livestock at the Kansas City stockyards under the Packers and Stockyards Act of 1921. Among other things, it was alleged that the secretary, who under the statute had power to make the order after ''full hearing'', had made the rate order without having heard or read any of the evidence, and without having heard the oral argument or having read or considered the briefs of the appellants, and that the only information which the secretary had as to the proceeding was what he derived from consultation with employees in his department. The district court of three judges, on motion of the government, had stricken these and other allegations of like import from

the bill of complaint, and had thus foreclosed proof in support thereof. The judgment was reversed on the ground that said allegations had been improperly stricken. By the judgment of reversal the defendants were required to answer said allegations on the theory, of course, that if the same were true the complainants had not had the hearing to which they were entitled in any substantial sense.

Such is not at all the situation here presented either in substance or by analogy. Here the petitioner was accorded a full hearing before a state officer authorized by the Constitution and laws of the state to conduct the same. He acted in full compliance with the authority vested in him and when his order was approved by a majority of the commissioners as required by law, the order became the order of the commission. In the absence of a showing, and there is none, that the commissioners failed to exercise their power in the authorized manner, it must be assumed that all of the legal requirements were complied with. Without exception, so far as we are advised, the procedure laid down by the law of the state has been recognized as affording due process.

Other points made by the parties need not be discussed.

Decision and order affirmed.

Waste, C. J., Seawell, J., Curtis, J., and Thompson, J., concurred.

Rehearing denied.