CARNEY et al.

v.

SOUTHWESTERN MOTOR TRANS-
PORT, Inc.

No. 10191.

Court of Civil Appeals of Texas.

Austin.

Jan. 20, 1954.

Rehearing Denied Jan. 27, 1954.

John Ben Shepperd, Atty. Gen., W. V. Geppert and L. P. Lollar, Asst. Attys. Gen., for appellants.

Ewell H. Muse, Morgan Nesbitt, Austin, for appellee.

GRAY, Justice.

This appeal is from a judgment awarding appellee a recovery of money paid under protest. Art. 7057b, Vernon's Ann. Civ.St. The money was demanded and was paid as franchise taxes under clause 1 of Art. 7084, Vernon's Ann.Civ.St., while appellee contends it was entitled to pay such taxes under clause (3) of said article.

A nonjury trial was had upon stipulated facts to the effect that: appellee is a corporation existing under the laws of Texas, and was incorporated under Section 69 of Art. 1302, Vernon's Ann.Civ.St., "to transport goods, wares and merchandise, or any valuable thing"; it operates as a common carrier motor carrier under certificates of convenience and necessity issued to it by the Railroad Commission; it is engaged in the business of transporting property for hire over the highways of the State along regular routes designated in its certificates and on regular schedules prescribed by the Railroad Commission; it is engaged solely in the business of operating as a common carrier and does not perform any other business or operations; the Railroad Commission regulates and supervises the operation of appellee, fixes and prescribes the rates to be charged by it for transportation services, prescribes rules and regulations relating to the safety of appellee's equipment, prescribes the schedules and frequency of service that appellee may render, and requires it to file annual operating reports and other data, and generally exercises regulation and supervision over appellee as the Commission is required to do by Art. 911b, Vernon's Ann.Civ. St.

It was also stipulated that the Railroad Commission has a division of motor transportation to which is committed the regulation of motor carriers such as appellee. It also has a gas utilities division which regulates gas utilities, but it has no other division which includes the word "utilities" in its title.

It was further stipulated that appellee is required to pay a franchise tax for the years 1952 and 1953 under the provisions of Art. 7084, supra. Appellee contends it is entitled to pay the tax as a public utility under clause (3) of said article, while appellants assert that the tax is due to be paid under clause (1) of said article and denies that appellee is a public utility within the meaning of clause (3).

The stipulation includes the amount of taxes due when computed under the respective claims of the parties.

Clause (1) of Art. 7084, supra, "Except as herein provided" requires every corporation, domestic or foreign, authorized to do, or doing, business in this State to annually pay, in advance, a franchise tax for the year following, and prescribes the rate and upon what it shall be based. No exemptions are listed in clause (1).

The portion of clause (3) pertinent here is:

"Except as provided in preceding Clause (2), all public utility corporations, which shall include every such corporation engaged solely in the business of a public utility as defined

by the laws of Texas whose rates or services are regulated, or subject to regulation in whole or in part, by law, shall pay a franchise tax as provided in this Article, except the same shall be based on * * *."

Clause (2) provides:

"Corporations, other than those enjoying the use of public highways by virtue of a certificate of public convenience and necessity granted by the Railroad Commission of Texas, which are required by law to pay annually a tax upon intangible assets, and corporations owning or operating street railways or passenger bus systems in any city or town and suburbs thereof, and corporations organized to and maintaining or owning or operating electric interurban railways, shall be required to hereafter pay a franchise tax equal to one fifth (⅕) of the franchise tax herein imposed against all other corporations under Section (1) herein."

Appellee does not assert it is a corporation within the meaning of clause (2).

The sole question to be here determined is: Does appellee come within the meaning of a public utility corporation as used in clause (3) and therefore entitled to pay its franchise tax as therein provided?

The courts and texts are generally agreed that there is no judicial definition of the term "public utility" sufficient to be all inclusive of every business and enterprise which by reason of its nature and character may acquire the status of a public utility. See 34 Tex.Jur., p. 702, Sec. 3; 43 Am.Jur., p. 571, Sec. 2; and 73 C.J.S., Public Utilities, § 1, p. 990. In Gulf States Utilities Co. v. State, Tex.Civ.App., 46 S.W.2d 1018, 1020, error ref., the Court said:

"In the case of Ladd v. Southern Cotton Press & Mfg. Co., 53 Tex. 172, our Supreme Court held the policy of this state to be that, in absence of a legislative enactment, a business theretofore strictly juris privati will not become juris publici as a matter of law by reason of its growth, magnitude, or the number of persons affected by it, since the right to control its property, or regulate its use or service, pertains to the legislative and not to the judicial department of the government. See, also, American Livestock Commission Co. v. Chicago Livestock Exchange, 143 Ill. 210, 32 N.E. 274, 282, 18 L.R.A. 190, 36 Am. St.Rep. 385; Richardson v. R. R. Commission, 191 Cal. 716, 218 P. 418. It may be conceded that there are cases in which courts have the right to declare an existing business affected with a public interest and subject to regulation and control without a regulatory statute, under some branch of the doctrine of the state police power; but in cases like the instant case, where no material inconvenience or injury is resulting to the public health or comfort because of lack of public regulation or control of the ice business, the last-cited cases are authority for the rule that, 'it is thought the better procedure for this declaration to come, in the first instance, from the legislature and not from the courts.' Thompson on Corporations (3d Ed.) 706, § 508. In practice and policy, the reasons for this rule were well stated in the case of American Livestock Co. v. Chicago Livestock Exchange, supra, as being that 'apart from the consideration that the extension and application of even existing rules of law to subjects not heretofore within their purview is legislative in its nature, the determination by the courts as to the precise point at which a mere private business reaches that stage of growth and expansion which is sufficient to render it juris publici would be surrounded with very great difficulties, and would present questions for which the courts, unaided by legislation, would be able to find no just or satisfactory criterion or test. But when the legislature, acting upon a competent state of facts, has interposed and declared the business to be juris publici, all difficulty is removed.'

This policy of procedure has been adopted by courts generally and by the Supreme Court of Texas in Ladd v. Southern Cotton Press & Mfg. Co., supra."

In the Court's quotation from American Livestock Commission Co. v. Chicago Livestock Exchange, there is contained the statement that:

"'But when the legislature, acting upon a competent state of facts, has interposed and declared the business to be juris publici, all difficulty is removed.'"

Thus there is clear recognition that the factual situation is a controlling element.

■ The intent of the Legislature as reflected by the entire act of which clause (3), supra, is a part must be determined, and when that intent is determined it becomes the law. City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W. 2d 273.

Present Article 7084 was enacted by the 52nd Legislature as an amendment to the prior article 7084. Acts 1951, 52nd Leg., p. 695, ch. 402, § 9 (p. 706). The title of the Act declares its purpose to be: To amend article 7084 "so as to increase the franchise tax therein levied upon every domestic and foreign corporation heretofore or hereafter chartered or authorized to do or doing business in the State".

The amended section (1) increased the tax by increasing the basis for its computation from $1 to $1.25 per $1,000 or fractional part thereof and provides a formula for such assessment. It also increased the minimum tax to be paid from $20 to $25. The Act made no change in clause (3), supra.

The phrase "as defined by the laws of Texas" contained in present clause (3) was written into the clause by the 51st Legislature. Acts 1949, 51st Leg., p. 975, ch. 536 (pp. 976–977). The title to that Act declared that prior Acts were amended "by designating corporations subject to

franchise tax;" by redefining "'written evidences of indebtedness' that are taxable". The Legislature concerned itself with the designation of, rather than a definition of, corporations subject to the tax.

Prior to the 1949 amendment the statute read:

"All public utility corporations, which shall include every such corporation engaged solely in the business of a public utility whose rates or services are regulated, or subject to regulation in whole or in part, by law, shall pay a franchise tax as provided in this Article * * *."

The 1949 amendment constitutes the present statute of which clause (3), with which we are here concerned, is a part.

■ The wording of clause (3) as well as the title to the Act clearly reflects the legislative intent to include in the clause "all public utility corporations * * * as defined by the laws of Texas". But we do not think it can be said the Legislature intended to limit the tax under clause (3) to only those corporations defined by the laws of Texas. The Act was dealing with both domestic and foreign corporations, and absent some designation of public utilities to be subject to the clause a foreign corporation designated by its foreign domicile as a public utility could assert its status as so designated and claim the benefits accordingly. It seems apparent to us that the legislative intent was to reserve to this State a right to designate corporations as public utilities.

Although the Legislature has designated certain corporations as public utilities, Art. 1446a, § 2, and in Chapter 10, Title 28, Vernon's Ann.Civ.St., has dealt with public utilities, it has not defined the term. However appellee does not say it is so defined by statute.

■ The statute or the Act does not undertake to define the term "public utility" for the purpose of the Act. There appears to be a valid reason for such failure because it is said that the Legislature can-

not make a corporation a public utility when in fact it is not for the reason that it cannot regulate private business to that extent. Associated Pipe Line Co. v. Railroad Commission of California, 176 Cal. 518, 169 P. 62, L.R.A.1918C, 849, but it can do so when the business has become important enough to the public as to justify public action. People ex rel. Durham Realty Corp. v. La Fetra, 230 N.Y. 429, 130 N.E. 601, 16 A.L.R. 152. This principle of law is recognized in Ladd v. Southern Cotton Press & Manufacturing Co., 53 Tex. 172 (cited in the Gulf States case, supra). There the Court said:

"If the magnitude of a particular business is such, and the persons affected by it so numerous, that the interest of society demands that the rules and principles applicable to public employments should be applied to it, this would have to be done by the legislature (if not restrained from doing so by the constitution) before a demand for such an use could be enforced by the courts."

and again at pages 191–192 of 53 Tex., the Court said:

"The conclusion to be drawn * * is, as we think, that the legislature may declare a particular business publici juris, if the facts and circumstances under which it is conducted justifies and the good of society requires it; but not that the court may so treat it in advance of legislative recognition or declaration. Whether this may be done, even by the legislature, without infringing upon the constitution, need not now be considered. Neither is it necessary for us at present to determine whether the submission of property and service to public use (as there is high authority for holding) is solely dependent upon the fact that those engaged in such business enjoy some franchise, privilege or immunity from the state, or did so in the early days of the common law when this character was impressed upon their property or service."

In Queen Ins. Co. v. State, 86 Tex. 250, 273, 24 S.W. 397, 405, 22 L.R.A. 483, Judge Gaines said:

"In Ladd v. [Cotton Press] Company, 53 Tex. 172, it was also decided, in effect, that a combination among the compressing companies in the city of Galveston, by which they increased the prices for compressing cotton, was not unlawful. This proposition is based distinctly upon the ground that compressing cotton is not a public business."

A careful reading of the opinion in the Gulf States case, supra, leads directly to the conclusion that the holding there made that the manufacture and sale of ice to the public in Texas is not a public utility business is based on the ground that the business was not affected with the public interest, and that the courts, in the absence of legislative enactment, will not declare a business "strictly private" juris publici because by reason of its growth and magnitude it has become affected with a public interest.

Section 22b of Art. 911b, Vernon's Ann. Civ.St., declares that the business of operating as a motor carrier of property for hire upon the highways of this State is a business affected with a public interest. The stipulation supra shows appellee to be such a carrier, that its authority to so operate is under certificates of convenience and necessity issued to it by the Railroad Commission acting by authority of Art. 911b, supra, and that its operations are subject to and are regulated by law. It renders service to the public under the regulations of the Commission as to the route over which the service is to be rendered, the rate charged and the schedule.

There is a legislative declaration that appellee's business is affected with a public interest, and also there is regulation, supervision and control, by law, of its business. The business done by it is rendering and offering its service to the public. Factually then it is a public utility.

We are convinced that the clause "as defined by the laws of Texas" in clause (3), supra, is not a limitation on the corporations to be taxed thereunder, and that because appellee is a public utility corporation which has received legislative recognition to the extent that its business is declared by law to be affected with the public interest and whose rates and services are regulated by law it is entitled to be taxed as a public utility under clause (3), supra.

Appellee does not claim an exemption from taxation, but that its tax is due under clause (3), supra. If, in fact, the clause is open to construction the doubts must be resolved in favor of appellee. Philtex Chemical Co. v. Sheppard, Tex. Civ.App., 219 S.W.2d 1010, error ref. n.r.e.

The judgment of the trial court is affirmed.

Affirmed.